TRUSTEES OF MAINE CENTRAL INSTITUTE

*vs.*

ORREN S. HASKELL and another, executors of GOING HATHORN.

Somerset.    Opinion January 11, 1882.

*Subscription to a fund for educational purposes.   Interest.*

When the trustees of an institution incorporated for educational purposes are capable of receiving money and carrying out the design of a subscription wherein the subscribers promise to pay to the order of such trustees the sums set against their names in six years from date to make up a building fund for said institution, such trustees are amenable to law in case of negligence or abuse of their trust; and when such subscription is accepted, and still more, when the trust is entered upon there is an implied promise for its faithful execution, and that is a sufficient consideration for the promise of each subscriber, to the fund.

Interest when an incident to a debt, must stand or fall with it.

ON REPORT.

Assumpsit against the executors of Going Hathorn to recover the following subscription of the testator:

"Pittsfield, August 27th, 1867.

"We will pay to the order of the trustees of Maine Central Institute, the sums set against our names, in six years from date, to make up a building fund for said institution.

| Names. | Dollars. |
|---|---|
| Going Hathorn, | $1000.00" |
| *   *   * | *   *   * |

The material facts found by the court are stated in the opinion.

*S. C. Strout, H. W. Gage and F. S. Strout,* for the plaintiff, cited: *Cummings* v. *Dennett,* 26 Maine, 399; *Williams* v. *Hagar,* 50 Maine, 22; Private Laws, 1866, c. 17; *Ladies' Institute* v. *French,* 16 Gray, 201; *Williams College* v. *Danforth,* 12 Pick. 544; *Trustees of Fryeburg* v. *Ripley,* 6 Maine, 442; *Fisher* v. *Ellis,* 3 Pick. 321; *Trustees, &c.* v. *Stetson,* 5 Pick. 507; *Amherst Academy* v. *Cowls,* 6 Pick. 432; *Limerick Academy* v. *Davis,* 11 Mass. 113; *Boutell* v. *Cowdin,* 9 Mass.

254; *Forster* v. *Fuller*, 6 Mass. 59; Chitty Contr. 30; 1 Pars. Contr. 453; Met. Contr. 185; *Cottage Street Church* v. *Kendall*, 121 Mass. 528; *Train* v. *Gold*, 5 Pick. 385; *Trustees Williams College* v. *Danforth*, 12 Pick. 541; *Thompson* v. *Page*, 1 Met. 565; *Ives* v. *Stillson*, 6 Met. 310; *Athol Music Hall* v. *Carey*, 116 Mass. 471; *Berkeley Divinity School* v. *Jarvis*, 32 Conn. 421; *Barnes* v. *Perine*, 12 N. Y. 18; *Walker* v. *Eames*, 9 Cush. 539; *Cong. Society* v. *Perry*, 6 N. H. 164; *George* v. *Harris*, 4 N. H. 533; *First Religious Society* v. *Stone*, 7 Johns. 112; *M'Auley* v. *Bellenger*, 20 Johns. 89. Upon the question of interest: *Johnson* v. *Bland*, 2 Burr. 1086; *Dodge* v. *Perkins*, 9 Pick. 384; *Hall* v. *Huckins*, 41 Maine, 580; *National Lancers* v. *Lovering*, 10 Foster, 511; *Foster* v. *Bidwell*, 27 Conn. 370; *Adams* v. *Fort Plain Bank*, 36 N. Y. 261; *Swett* v. *Hooper*, 62 Maine, 55.

*D. D. Stewart*, for the defendants.

The only remedy, if it could be shown that money had actually been expended on the faith of this subscription, was by an action for money paid and expended. *Farmington Academy* v. *Allen*, 14 Mass. 175; *Limerick Academy* v. *Davis*, 11 Mass. 113; *Bryant* v. *Goodnow*, 5 Pick. 228; *Mirick* v. *French*, 2 Gray, 423; *Bridgewater Academy* v. *Gilbert*, 2 Pick. 579.

The alleged subscription is utterly barren of all consideration and the case falls exactly within the case last cited above and *Trustees Hamilton College* v. *Stewart*, 1 N. Y. 581.

No case is cited by counsel, and it is believed none can be found where proof of a consideration outside the subscription itself has been held admissible and sufficient except where the terms of the subscription itself authorized and laid the foundation for such outside proof as in the cases cited by counsel.

The plaintiffs must show that they have laid out and expended money on the faith of this subscription and equaling the whole of it, and that they have not done. *Mirick* v. *French, supra*.

The counsel further contended in an able argument that the subscription had been paid.

DANFORTH, J.  The first three objections raised to the maintenance of this action have already been disposed of by this court

when it was considered upon demurrer. 71 Maine, 487. It was then held that the special counts in the writ in all respects with a single exception not now material, were sufficient. This view of the case seems to be fully sustained by the later, if not by the earlier authorities. In a class of cases where there was in the subscription paper no promisee by name or description and possibly in a few where all the consideration was in the future, and the action could, as was supposed, be maintained after the promisee was ascertained only on the ground of a ratification of the contract by the promisor, or a payment of money by the plaintiff, it was suggested that the proper action would be for money laid out on the ground of an implied promise; and some of the declarations were framed to conform to this view. *Farmington Academy* v. *Allen*, 14 Mass. 172. Here and in other cases of the like kind cited in the argument, the paper itself does not show a completed contract. It lacks both a payee and a consideration, hence it would not alone support an action. Nevertheless in the case cited and which was sustained, it was a material element in the defendant's liability and in fact a necessary element; without it no implied promise could be inferred from the subsequent conduct of the party. This being so there can be no harm arising from its insertion in the declaration as such element adding what other elements may be necessary to make the completed contract whether express or implied. It would indeed be something new in legal procedure if a special declaration sufficient to maintain an action cannot be made when it can be maintained under a general one. Such a declaration was made in the present case.

It necessarily follows that even if the subscription paper be without consideration and insufficient of itself to support an action, a consideration outside may be averred and proved. It is too well settled in our state that the consideration for a written promise may be shown outside the written instrument to require any citation of authorities and if it can be proved under a general count, as in *Farmington Academy* v. *Allen*, certainly it can be in a special count like that in the case at bar.

But we are not prepared to admit that the subscription paper in this case "is a bare, naked promise," without any considera-

tion whatever. It is true no consideration was actually received at the time of signing, but one is plainly implied, if not expressed, from the language used. The promise was of money for a specified purpose "to make up a building fund for said institution." This purpose was ever recognized by the law as a public charity. The promise was made to a definite payee by name, one legally competent to take, incorporated for the express purpose of carrying out the object contemplated in the promise and therefore amenable to law for negligence or abuse of the trust. It is not of course binding upon the promisor until accepted by the promisee and may up to that time be considered as a revocable promise. But when so accepted and much more when the execution of the trust has been entered upon, when money has been expended in carrying out the purpose contemplated, it becomes a completed contract binding upon both parties ; the promise to pay and at least the implied promise to execute, each being a consideration for the other.

In *Amherst Academy* v. *Cowls*, 6 Pick. 427, the cases before that decided, were examined, and in the opinion, on page 438, it is said, "On this review of the cases which have occurred within this commonwealth, analogous in any degree to the case before us, we do not find that it has ever been decided, that when there are proper parties to the contract, and the promisee is capable of carrying into effect the purpose for which the promise is made, and in fact amenable to law for negligence or abuse of his trust, such a contract is void for want of consideration." Still later in *Ladies' Collegiate Institute* v. *French et als.* 16 Gray, 196, a case similar to this, after referring to several cases, CHAPMAN, J., on page 201, says, "It is held that by accepting such a subscription, the promisee, on his part, agrees with the subscribers, that he will hold and appropriate the funds subscribed in conformity with the terms and objects of the subscription, and thus mutual and independent promises are made, which constitute a legal and sufficient consideration for each other. They are held to rest upon a well settled principle in respect to concurrent promisees." The same in principle is *Athol Music Hall Company* v. *Carey*, 116 Mass. 471. A similar principle and one applicable to the

case before us, is recognized in *Church* v. *Kendall*, 121 Mass. 528, and is thus stated on page 530, "Where one promises to pay another a certain sum of money for doing a particular thing, which is to be done before the money is paid, and the promisee does the thing, upon the faith of the promise, the promise, which was before a mere revocable offer, thereby becomes a complete contract, upon a consideration moving from the promisee to the promisor; as in the ordinary case of an offer of reward."

In our own State these principles have become well settled law. True, in *Foxcroft Academy* v. *Favor*, 4 Green. 382, the action failed because it did "not appear that any monies have been expended by the trustees, or that any part of the subscription was ever paid, or offered to be paid." But in a later and more carefully considered case, *Parsonage Fund in Fryeburg* v. *Ripley*, 6 Green. 442, it was held that the acceptance of a similar promise was an engagement on the part of the trustees to perform the conditions and was a sufficient consideration for the promise. In the recent case of *Carr* v. *Bartlett*, 72 Maine, 120, the facts did not require any decision as to the effect of a mere acceptance, but it was held that a subscription without consideration in the first instance, and revocable until it became a completed contract, became such and was binding when the associates had "paid their subscriptions, made purchases, and entered into contracts necessary for the consummation of the common enterprise." In this latter case, the "common enterprise" was of a different kind from that in the case at bar, therefore the consideration differed in kind. Nevertheless each is a good consideration and equally recognized as such by the law.

That the subscription in the case before us, comes within these well settled principles, is evident. That it has been accepted is free from doubt; that the building therein contemplated has been erected is also certain; that it was erected by the trustees relying upon, and in conformity with the provision in the subscription paper, would seem to be sufficiently evident. The subscriptions were obtained for that purpose, a part of them were paid to the trustees, the building was erected with so far as appears, nothing to rely upon except these subscriptions and such others as might be obtained.

It is not necessary that the trustees should have relied alone upon the subscriptions then made, and if it is incredible that they should have made a contract for the erection of a building, involving an expense of nearly thirty thousand dollars when but a small proportion of that sum had been subscribed, it would certainly be no less incredible to suppose they would have made such a contract with no reliance upon such subscriptions. It is not only evident that these subscriptions were relied upon to the extent of what might be realized from them, but it is equally evident that all the amount then, or subsequently subscribed for the building, was necessarily expended for that purpose.

Upon the question of payment the burden of proof rests upon the defendants. After a careful examination of the evidence with the light afforded by the able and elaborate argument of counsel, we fail to see sufficient to satisfy us that the amount or any part of the subscription has been paid.

It is true that the treasurer's accounts show a large amount of money paid for building purposes in 1868 and 1869, and it may be true that Mr. Hathorn was "able, willing and desirous" of paying his subscription before it became payable by its terms. But of this we find no evidence in the case. But we do find in the same treasurer's account where the money was obtained to pay this large amount, and none of it appears to have come from this subscription.

It also appears from the records, that Mr. Hathorn had bills of considerable amount, for labor and materials furnished for the building upon which this subscription might have been allowed. But it was not then payable, and the same records show how these bills were paid, and no such allowance appears.

It may be singular that this subscription does not appear among the assets in the reports of the different treasurers. But the same is true of other subscriptions upon the same paper, particularly those of Vickery and Atkinson which were assets at the time the reports were made, and were paid a long time afterwards. It further appears that the alleged report of the first treasurer, the omission from which is so much relied upon, is a paper found in

his desk long after he had ceased to be treasurer, without any evidence that it was ever presented to or acted upon by the trustees. It cannot therefore be admissible in evidence against them. The inference to be drawn from these reports as an admission of payment, if they are admissible for that purpose, is very much weakened if not overcome, by the additional facts, that it must have been a part of the assets, if we may believe the uncontradicted testimony of the witness Gerrish, who says it was, with the assent of Hathorn himself, as late as 1870, reckoned among the assets in a statement made to the legislature. The statement of this witness that it was not on the treasurer's books, may serve to explain its omission from the reports. If its absence from the reports as an asset is significant as tending to show payment, the absence of any credit for money received upon it, is quite as significant the other way, and if the treasurer was guilty of fraud in not reporting it as an asset, he could be no less guilty in withholding the credit.

By the terms of the subscription, the amount was payable in six years from its date. From that time it would be on interest. Interest is an incident of the debt, and must stand or fall with it. A sufficient demand upon the executors for the debt as required, is admitted to have been made. This carries with it all the incidents. As the debt is recoverable, so must the interest be also.

*Judgment for the plaintiffs for $1000,*
*and interest from August 28, 1873.*

APPLETON, C. J., WALTON, BARROWS, VIRGIN and SYMONDS, JJ., concurred.