## Noble *against* M'Clintock.

A partner has no power to bind the firm for his own private debts without the assent of his co-partners; but if that assent be given, it is the province of the jury to judge of the extent of it; and it is error if the court instruct the jury on this point as a question of law.

ERROR to the District Court of *Allegheny* county.

Washington M'Clintock and Robert Thompson, partners under the firm of W. M'Clintock & Co., against Lewis Noble and George A. Bayard, partners under the firm of Lewis Noble & Co. This was an action of *assumpsit* for goods sold and delivered, in which the question was as to the liability of the defendants, and not as to the amount of the plaintiffs' claim.

David Noble sworn.    I was a partner in the firm of W. M'Clintock & Co.   It commenced in 1837, 28th March or 1st of April.   It terminated 1st July 1839.   I went to the store with Jamison, the clerk of the defendants.   Told M'Clintock that I owed Noble & Co.; that they wanted to get some goods.   He asked me what amount.   I told him between $500 and $600. At that time nothing further said between us.   Jamison and he had some conversation which I did not hear; only I heard Jamison say he wanted the orders to come from the mill, so that the hands in getting the goods could not overdraw.   Some time after the dissolution, I called with Mr Lewis Noble.   Spoke of the dissolution.   He said they were at him for the bill.   I gave a note to Lewis Noble & Co. for $500, near the time they commenced getting goods.   I got goods from them afterwards.   The understanding I had was that they should take it out in goods.   I gave the defendant no other notice of the dissolution of the partnership. It was in the papers.   My account with the firm is overdrawn. M'Clintock rendered me an account of goods paid defendants for me; it was $595, or thereabouts.

Cross-examined—On purchasing additional lumber from Lewis Noble & Co., there was no new arrangement as to how it should be paid.   It was in the winter before the partnership was dissolved that the arrangement was made.

John Jamison sworn.   Early Mr David Noble came to me and wanted I should make an arrangement with Lewis Noble & Co. to get goods from the warehouse of W. M'Clintock & Co.   That he was a partner there, and that it would be an accommodation to meet his payments partly in that way.   He had an account with the defendants previously, and he allowed the account to run

[Noble v. M'Clintock.]

on.  Lewis Noble agreed to the arrangement.  I went with D. Noble to the store for the purpose of making the arrangement there, in order he should make arrangement with them to receive orders from Lewis Noble & Co.  I don't know what passed between Mr Noble and M'Clintock at the time, but afterwards Mr Noble's orders were received on credit of David Noble.  There was one or two small bills got from the store on David Noble's personal order.  I left employment of L. Noble & Co. in March 1840.  M'Clintock told me in the month of September 1839, that they had dissolved partnership with David Noble, and that what L. Noble was now getting was not on faith of David Noble's credit.  I told Noble & Co.  That was the first intimation that I had of the dissolution of the firm.  I did not take any particular memorandum of the time.  M'Clintock told me it was not previous to 6th September 1839.  The merchandise we got from plaintiffs was all passed to the credit of David Noble, from 27th March 1838, till 18th January 1840.  On 6th of September 1839 there was a balance due from David Noble to Lewis Noble & Co.  I have frequently conversed with M'Clintock about the arrangement entered into between D. Noble and myself.  Requested him that what goods they furnished Lewis Noble & Co. should be furnished as low as cash.

William Alsop sworn.  I went to Noble to get an order.  He told me to tell M'Clintock he was charging the goods wrong; that he was charging him in place of David Noble.  I asked him to give me a few lines to M'Clintock.  I took them.  When he was making out my bill, I asked him to give me a few lines back to Lewis Noble.  That is the bill.

" 1838, *March* 30*th.*

" The account we have charged to you, but it is to be settled by charging it to David Noble."

The plaintiffs' account, upon which a verdict was rendered in their favour, was as follows:

" Messrs. Lewis Noble & Co.
                    " To W. M'Clintock & Co.,        Dr."
Commencing with July 5th 1839.
And terminating January 2d 1840.
                                Amounting in all to $268.06.

Books of original firm of M'Clintock & Co., referred to by defendants, appeared to cease in July, then transferred.

Plaintiffs gave in evidence the order drawn by defendants on them.

" Charge Lewis Noble & Co."

Newspaper notice of dissolution of partnership, 3d of July 1839. George A. Bayard receives the paper.

II. — 20

[Noble v. M'Clintock.]

Thomas Pollock sworn. I received an order from Lewis on M'Clintock & Co. for goods. I found the pay I had was accepted. I went on and took out $60.00 worth of goods. Several months after I was back with another from Lewis Noble. He said my mother-in-law was under impression he would charge more because she brought an order and not cash. He meant to convince me that he sold the goods as low on that order as cash. He said David Noble had an interest in the store; that he had taken up a large bill with Lewis Noble, and that bill had to be paid, and was anxious to pay the bill in that way.

John Jamison sworn. The balance against D. Noble on the 6th of September 1839, was $127. I called on M'Clintock and wished him and D. Noble to settle the account. M'Clintock told me they had dissolved partnership, and he had nothing to do with him.

Charge. A partner has no power to bind the firm for his own private debts. David Noble could not, therefore, make any contract with defendants which could bind the partnership to pay his present debts, or his future ones, without the consent of his copartners. The defendants seem to be aware of this, and therefore called on M'Clintock who agreed to pay out of goods in the store on defendants' order, to an amount stated not to exceed $600. This they have done, and considerably more, before this bill was made with plaintiffs. I see nothing in the evidence to justify the supposition (if such was entertained by defendants) that M'Clintock & Co. would pay all present and future debts that D. Noble might contract with defendants. The defendants' own testimony shows that $600 was the amount for which the firm of M'Clintock & Co. agreed to accept the orders of defendants on D. Noble's account. The question about notice of dissolution of partnership does not arise in the case; nor does the doctrine apply to it upon any statement of the facts given in evidence by the defendants. You should find for plaintiffs, on defendants' own showing: the amount of the account is not disputed.

The defendants excepted to this charge.

*Findlay*, for plaintiffs in error. The court misapprehended the arrangement made between the parties, and erroneously gave the jury a binding direction about the matter of fact as to the extent of the plaintiffs' engagement to furnish goods upon the credit of D. Noble; this should have been referred to the jury.

*Lowry*, for defendants in error. The court rightly instructed the jury that the original arrangement was limited to $600; and there is no reason why Thompson, a new partner, should be bound by the arrangement.

[Noble v. M'Clintock.]

The opinion of the Court was delivered by

ROGERS, J.—A partner has no power to bind the firm for his own private debts, without the assent of his co-partners; and whether there was a consent, and to what extent, is the principal matter in controversy. If the conversation which took place between David Noble, and his partner, M'Clintock, had been communicated to Noble & Co., or what is the same thing, to their agent, Jamison, there could be no objection to that part of the charge which states " that the defendants' own testimony shows that $600 was the amount for which the firm of M'Clintock & Co. agreed to accept the orders of defendants on D. Noble's account." But there is great doubt, in my mind, whether this ever came to the knowledge of the defendants: nay, if I may be permitted to judge from the testimony returned with the record, it is pretty clear that it was a private conversation between M'Clintock and Noble, of which they did not think proper to inform the defendants, or their agent. They were under the impression, and they were permitted to remain under that impression, that the firm of M'Clintock & Co. would accept the orders of D. Noble for past as well as future debts, without restriction as to the amount. And in confirmation of this understanding, we find that orders were accepted to an amount greatly exceeding six hundred dollars without objection. If M'Clintock intended to limit the responsibility of the firm, it was his duty to be explicit on that point to the defendants, who certainly could have no reason to believe that he distrusted the solvency of his partner. The defendants had been induced to believe that the proposed arrangement would be an accommodation to all parties, as it certainly would, but for the unexpected contingency of the insolvency of D. Noble, the other partner. The contract, and the extent of it, was a matter exclusively for the consideration of the jury; but the court, in their charge, have withdrawn the case entirely from their decision. Without intending to express any opinion in the case, we can not think it so clear in favour of the plaintiffs as to justify the court in charging the jury peremptorily against the defence. There are other matters which may arise, on another trial, as to which we express no opinion.

Judgment reversed, and a *venire de novo* awarded.