## COMMONWEALTH *v.* C. CLARKSON.

[Charged with obtaining $218 from G. Manley, under false pretences, &c.]

ON the conclusion of the argument of the counsel in this case, on the 12th July, 1845, the RECORDER remarked in substance, as follows:

The questions involved in this case, as well as the request of the defendant's counsel, carefully to consider them, have induced me to put in writing the reasons on which the judgment about to be made, is founded.

On the 2d of July last, Charles Clarkson went to the broker's office of George Manley and asked the loan of some money, on a draft drawn by him, on his brother at Schuylkill Haven. For reasons, sufficient for the government of Mr. Manley's judgment, he refused—for at the time he owed to Manley about $300. On the same day, Mr. Clarkson again went to the office of Mr. Manley, and producing the draft, said, "now I've got the firm's endorsement," or words to that effect, and handed Manley a draft, drawn at three days' sight for $625, on A. A. Clarkson, and endorsed "Charles Clarkson & Co." Manley advanced $218 on the draft, and at the end of the necessary time, the draft was returned protested. On waiting on Mr. Clarkson, he was unable to pay, and when Mr. Manley went to what he believed to be the firm of "Charles Clarkson & Co.," he learnt that no such firm existed—that on the 1st day of

January, 1845, it dissolved—that Mr. Mulligan was solely authorized to wind up its affairs, and Mr. Clarkson had no authority to endorse any such draft, or in any way use the name of the firm.

Mr. Manley distinctly and positively asserts, that he knew there was such a firm as "C. Clarkson & Co.," and that on the fact of the endorsement by that firm of the individual draft, he was induced to advance the money. On this testimony, the commonwealth asks a binding over, for obtaining $218 under false pretences. The counsel for the defendant contends, that it was not a criminal offence, because the said Charles Clarkson had a right to use the name of the firm, or any other name in his dealings with the world—and 2d, that at the time of offering this draft, the firm did exist, and was only dissolved sub modo—and that therefore, Clarkson & Co. are jointly liable in a civil proceeding only.

It seems to me, to be the law, that after dissolution of a firm and due notice given, the outgoing partner has no right to use the name of the firm, except in bona fide partnership business; and then it binds all the members of the firm, as much so, as though the partnership did exist at the time. The transaction under consideration, was a private matter, one of accommodation between Mr. C. Clarkson and his brother A. A. Clarkson, and had no relation to the firm or its legitimate business; and the putting on the draft, the name "C. Clarkson & Co." was a forgery, because no such firm existed, for such purpose. It was in the words of the text-books, "the fraudulent making and alteration of a writing, to the prejudice of another man's rights;" 4 Bl. Com. 147; or a false making, a making malo animo of any written

instrument, for the purpose of fraud and deceit. 2 East P. C. 852.

It is true, as defendant's counsel contends, that a man may use what name he pleases, or give what style he thinks fit, to the business he is engaged in, but that is far different from using the name of an existing partnership, which had credit and vitality—a partnership then in being, and in which the person using its name, had no interest; he having either voluntarily or by other means dissolved his connexion with such firm, and possessing whatever right he had by the law, only for well defined purposes. His having put the name of the firm, which he had a restricted right to use, to this draft, which under all circumstances he had no right to do, gives to its use such a falsity, and implies such an intent, as to bring it under the prohibitions of the criminal law.

Charles Clarkson, had no colour of law to endorse the name of "C. Clarkson & Co." on this draft. 1st. Because, he asserted by the endorsement, what was not the fact, viz. that there did exist such a firm, which, if it did exist, was for qualified and specific purposes, and had its vitality only so long as it was necessary to settle and adjust the partnership affairs; and therefore, 2d, by this endorsement, he impliedly asserted that this money, the result of the draft, was for the benefit of the said firm, in the settlement of its outstanding and unfinished business—which was not the case; and by both these, or either of these assertions, he gave a false pretence to the effect of an endorsement, which it is questionable if he had the right to execute. The following authorities are referred to on the subject of

partnership rights and liabilities, as connected with the questions under consideration: Baird *v.* Cochran, 4 S. & R. 397; Noble *v.* M'Clintock, 2 W. & S. 152; Foster *v.* Andrews, 2 P. R. 160; Mifflin *v.* Smith, 17 S. & R. 165; Houser *v.* Irvine, 3 W. & S. 345; 2 Kinnie's Law Compendium 401; 1 Peters' S. C. R. 370; Gow on Partnership 310; 3 Esp. N. P. C. 108; 1 H. Bl. 155; 4 Johns. Rep. 224.

The name of "Charles Clarkson & Co." was placed on the draft for some purpose. If by the terms of the dissolution of the partnership, Clarkson had no right to use it, and he did use it, for pusposes for which it was invalid, is it a forgery?—for was it not the making of a false paper, *malo animo,* for the purpose of deceit. But as forgery is a misdemeanor, as well as the offence charged under the statute of 12th of July, 1842, the commonwealth invokes the penalty prescribed by that act. The 21st sect. enacts, that every person who with intent to cheat or defraud another, shall designedly by colour of any false token or writing, or by any false pretence whatsoever, obtain for any person any money, &c., they shall be punished by imprisonment, &c.

Under this act, the design, and the mode of, and the obtaining the money, are the three ingredients necessary to its violation. The design must be interpreted by the mode and the object.

The draft was a false writing. Mr. Clarkson was told just prior to the date of the draft, that he had no authority or right to use the name of the firm for any purpose, by the agreement between him and Mr. Mulligan. If he had no right to use it for any purpose, he knew he had no right to use it for purposes entirely

illegal; raising money for himself by accommodation acceptances of his brother. The writing was false, and the pretence that the writing was genuine, was false, and thereby, as Mr. Manley distinctly swears, this money was obtained. This is a clear violation of the statute. It does not appear necessary, to examine more fully the principles of the law of partnership. Enough has been said on this subject, to cover the very able ground taken by the counsel for defendant. However ill advised the conduct of Mr. Mulligan may or may not have been, I do not think that he acted other than in good faith. These acts of his, do not amount to sufficient to re-establish the partnership, after its formal and legal dissolution in January, 1845. Mr. Mulligan testifies, that he repeatedly gave notice to Mr. Clarkson, that he was acting contrary to their mutual understanding, and that he could not use the name of the firm, for the purposes in question. That he might have done more, is evident; but he did enough to continue and preserve the integrity of the dissolution of the co-partnership.

It is with regret; no other sentiment can exist in the mind of a magistrate, when called upon to do what his views of the law and the facts compel him to do in any case, but especially in one like the present; it is with regret, that I am called upon to order, that Charles Clarkson enters into security in the sum of $700 for his appearance for trial, on the charge of obtaining $218 from George Manley, contrary to the provisions of the 21st sect. of the act of 12th July, 1842, entitled an act to "abolish imprisonment for debt."

*H. M. Phillips*, for commonwealth.
*Clarkson*, for defendant.