# MARYLAND REPORTS.

EDWARD C. THOMAS and JOSEPH A. THOMAS *vs.*
THOMAS M. GREEN.

*Partnership as to third persons—Province of the Jury.*

Where a party by his conduct held himself out as a partner of another, in a transaction affecting a third person, who had reasonable grounds to believe that he was such partner, and so trusted the firm, and had no knowledge to the contrary, they will be clearly held partners as to such third person.

Whether a person held himself out as a partner, is a fact to be ascertained by the jury from all the evidence in the case.

APPEAL from the Superior Court of Baltimore City.

This was an action instituted by the appellee against the appellants, charging them as co-partners, and seeking the recovery of certain promissory notes, filed with the narr. The narr. contained the common counts, and special counts on the notes, and the defendants pleaded in the usual manner. The controversy was as to the liability of Joseph A. Thomas as a co-partner with his co-defendant, E. C. Thomas, in the business of E. C. Thomas and Sons. The plaintiff proved by Benj. R. Yoe, that in the summer of 1866, he was a member of a firm known as Green & Yoe, composed of himself and the plaintiff, and that the notes sued on,

1            v. 30

were renewals of older notes, and that the name, of "E. C. Thomas & Sons," on the notes, was signed by Joseph A. Thomas; that the original transaction, out of which the notes arose, commenced in the summer of 1866, when Green & Yoe purchased of E. C. Thomas & Sons, $5,000 of canned peaches, deliverable in thirty days, and they paid E. C. Thomas & Sons, $50 and gave their note for $4,950; that this transaction was with E. C. Thomas, and for some reason, not remembered, the peaches were not delivered, and about two months afterwards E. C. Thomas proposed to repurchase the peaches at $400 or $450 advance, to which they assented, when E. C. Thomas gave the check of E. C. Thomas & Sons, for the $400 or $450, and notes of the same firm for the balance; that these notes maturing, and E. C. Thomas & Sons, not being prepared to meet them, Green & Yoe issued their notes to raise the money, and thus a system of partial renewals commenced and was continued, some cash being at times paid.

The plaintiff, himself, testified to the commencement of the transaction substantially as proven by Yoe; that the original transaction was with E. C. Thomas, and witness' acquaintance with Joseph A. Thomas, commenced some two months afterwards; that he remembered that Joseph A. Thomas said to him on one occasion, "we have built up a fine trade;" "we will have to pack goods this fall in order to save our trade."

The defendants proved by Edward C. Thomas that the firm of E. C. Thomas & Sons, was established four or five years prior to 1860, and consisted of himself and his two sons, S. W. Thomas and E. C. Thomas, Jr.; that on July 1st, 1860, a dissolution took place, and notice was published in the American; that Joseph A. Thomas, had been a member of the bar, and his practice declining in 1862, the witness invited him to come with him and assist in the business; that he was there on a salary and got the money as he wished and had no interest in the business, was merely a confidential clerk on a salary; that witness expected to sell his coal lands

and have a large surplus, and told Joseph that when he did so, he would put in more capital and take Joseph into partnership; witness was a long time ill and Joseph was in charge of the business, and was for convenience, authorized by the witness, to sign the name of E. C. Thomas & Sons, and after his recovery he was absent a good deal about his lands, and the same course continued; he sold the peaches to Green & Yoe, and afterwards repurchased them, and made and gave the notes; and no enquiries were made as to who constituted E. C. Thomas & Sons, and Green & Yoe dealt with him alone; that he had become accustomed to using the term "we," and employed it after the dissolution in 1860; that in the summer of 1867, he presented to Green & Yoe an agreement for extension, and read it to them several times, at several interviews, in which the stipulations were for the creditors of E. C. Thomas, trading as E. C. Thomas & Sons, and they objected only to the *time*, and not to the absence of the name of Joseph A. Thomas. The defendant, Joseph A. Thomas, testified that he had no interest in the business, and only received a salary; that when the *first renewal* was to be made, he applied to Yoe, and told him his father was absent and had not left money enough to pay the note, and had asked him to call about a renewal.

The plaintiff then proved by Yoe, that when the paper referred to by E. C. Thomas, was presented, he objected to the omission of the name of Joseph A. Thomas, and made it one of the grounds for not signing.

*First Exception:* The defendants presented six prayers, which were rejected by the Court. The third, fifth and sixth, it was conceded by the defendants were properly rejected, the others are as follows:

1. If the jury shall believe from the evidence in the cause that the firm of E. C. Thomas & Sons had been composed of three parties, of whom two retired in 1860 or 1861, and that notice was given through advertisement in one of the daily papers of the city of Baltimore, of the retiring of the two par-

ties, and that the defendant, E. C. Thomas, would continue alone the use of said firm name, then the jury cannot properly infer from the use of such name merely, in 1866 or 1867, that there was any person other than E. C. Thomas, trading under that name.

2. If the jury shall find the facts set forth in the defendants' first prayer, then the character of the business name offered in evidence, is not an element which can properly enter into the consideration of the jury making up their verdict.

4. That an agent or clerk may be authorized by parol, as well as in writing, to sign the name of his principal, and the jury are not bound to find a co-partnership between the defendants, from the fact that the firm name to the contracts offered in evidence was signed by the defendant, Joseph A. Thomas.

The Court (DOBBIN, J.) having rejected the defendants' prayers, gave the following instruction to the jury:

If the jury shall believe, from all the evidence in the cause, that at the time of the making of the original transaction testified to in the evidence, or the renewals, in part, of the same, upon which this suit is brought, the defendant, Joseph A. Thomas, held himself out to the plaintiff, or to his then partner, as a co-partner in the firm of E. C. Thomas & Sons, and the said plaintiff had reasonable grounds to believe that he was such partner and trustee of the firm which he believed so to exist, and had no knowledge to the contrary, then the plaintiff is entitled to recover against both the defendants, notwithstanding the jury may find that the said Joseph A. Thomas was not, in fact, a partner in said firm of E. C. Thomas & Sons by any contract of co-partnership.

To the refusal of their prayers and to the instruction given to the jury by the Court, the defendants excepted.

*Second Exception:* After the jury had retired to deliberate upon their verdict and had remained over night in their room, one of the jurors requested an explanation of the

meaning of the instruction given by the Court. The counsel for the plaintiff and the defendants being asked if they objected to an explanation being given, responded that they did not object, the right of exception being reserved to them. The Court thereupon gave to the jury the following explanation :

The instruction which I have given to the jury is intended to say, that no matter what was, in fact, the relation of Mr. Joseph A. Thomas to the firm of E. C. Thomas & Sons, whether as agent, or clerk, or partner, or neither, if he by his acts and conduct held himself out to the plaintiff as a partner, with the consequences stated in the instruction, he is liable in this action.

To this explanation the defendants excepted, and the verdict and judgment being against them they appealed.

The cause was argued before BARTOL, C. J., NELSON, STEWART, GRASON, MILLER and ROBINSON, J.

*William A. Fisher* and *Charles Marshall,* for the appellants.

*P. M'Laughlin,* for the appellee.

STEWART, J., delivered the opinion of the Court.

The appellants having abandoned their third, fifth and sixth prayers, our attention is directed to the rejection of their first, second and fourth prayers, and the instructions of the Court below, to the jury, in the first and second exceptions.

The first and second prayers were objectionable and properly refused, because they proposed instructions to the jury in relation to certain isolated and detached matters, not material, according to the current of all the testimony, to the establishment of the claim of the appellee, nor to the legitimate defence of the appellants. They could only embarrass and mislead the jury in considering the substantial questions

between the litigants. From a comprehensive review of all the evidence, it was palpable that the controlling enquiry of the jury was not whether the appellants were really co-partners in trade; but had they been so held out to the appellee under such circumstances as to make them liable to his demands.

The first part of the fourth prayer presented merely an abstract proposition, which the Court on that account could not grant. The second part was not pertinent, because, if there were, in point of fact, no co-partnership between the appellants, the appellee would not be concluded thereby, as he was seeking to recover from the appellant, Joseph A. Thomas, from the manner in which he held himself out to him as a co-partner; and knowing nothing to the contrary, had trusted him as such. If the jury believed from all the evidence that the conduct of Joseph A. Thomas was reasonably calculated to induce such an impression on the mind of the appellee, who had trusted the firm under that belief, such deportment would make him liable as a partner to the appellee.

This conclusion might be deduced from presumption, from a consideration of all the circumstances, as well as by express acknowledgment of the fact.

However, the ruling of the Court, very clearly expounded the law applicable to the facts in the case. If the Court had submitted a proposition of law to the jury, or had blended law and fact as insisted upon by the appellants' counsel, the instruction would not have been vitiated on that account, since the provisions of the Act of 1862, ch. 154, because the objection was not made at the trial below.

But whether the appellant, Joseph A. Thomas, held himself out to the appellee as a co-partner in the firm of E. C. Thomas & Sons, was a fact to be ascertained by the jury from all the evidence in the case.

The further instruction of the Court requiring the jury, before they were authorized to find for the appellee, to be-

Thomas *vs.* Green.

lieve that the appellee in addition "had reasonable grounds to believe" that he was such partner, and so trusted the firm, and had no knowledge to the contrary, were matters properly justifying the instruction, and in that respect were as much calculated to benefit the appellants as the appellee.

The concluding portion of the instruction incorporates a sound and just principle of law, to wit, that notwithstanding the jury may find that Joseph A. Thomas was not, in fact, a partner as between him and E. C. Thomas, yet if by his conduct, including acts or declarations he held himself out to the appellee as a partner, he was certainly bound to make good that character to prevent fraud and deception upon others. In such cases they will be clearly held partners as to such persons. This doctrine is founded in the enlarged principles of natural law and justice, *ex æquo et bono.*

For wherever one of two innocent persons must suffer from a false confidence or trust reposed in a third, he who has been the cause of that false confidence or trust, ought to suffer, rather than the other. *Story on Partnership, secs.* 64, 65.

The instruction of the Court to the jury after they had retired, upon request being made by one of their number, referred to in the second bill of exceptions, explaining more fully to the jury the import of the instructions given in the first exception, was but a more detailed and emphatic statement of the law, and was warranted from the circumstances developed by the testimony in the trial of the case, and from the law applicable thereto.

We do not see that any injustice has been done to the appellants by the action of the Court below.

*Judgment affirmed.*

(Decided 7th January, 1869.)