HARRY S. ERDMAN, Individually and as Surviving
Partner of F. S. Erdman & Son,

*vs.*

THE TRUSTEES OF THE EUTAW METHODIST
PROTESTANT CHURCH, A Body Corporate.

*Partnerships: Note for individual debt; when binding on firm.
Prayers taking case from jury: When improper.*

Prayers to withdraw the case from the jury should not be
allowed when they involve facts which are properly for the
consideration of the jury.                                    p. 598

Where one enters into a subscription to a fund, on the faith
and strength of which other subscriptions are obtained or work
done, the contract becomes binding and enforceable.           p. 601

A partnership note given in payment of the individual debt
of one of the partners is binding on the partnership, if the note
is given on the authority of the others, or if they acquiesce in it,
or regard it as an obligation of the firm.                    p. 602

The question of such authority or assent is one for the jury,
under proper instructions from the court.                     p. 603

*Decided January 9th, 1917.*

Appeal from the Superior Court of Baltimore City.
(Ambler, J.)

The facts are stated in the opinion of the Court.

The following is the prayer directed by the Court to be included in the report of the case:

*Plaintiff's 4th Prayer.*—The plaintiff prays the Court to instruct the jury should it find from the evidence in this case that the defendant, Harry S. Erdman, on December 28th, 1910, signed and delivered to the plaintiff the promissory note for $500 sued on in this case, and should the jury further find that the said promissory note was given to and accepted by the plaintiff in payment of a subscription for that amount made by the said Francis S. Erdman, deceased, and that upon the faith of such subscription the plaintiff had incurred obligation to third parties, and that said note is still unpaid, and if the jury shall believe from all the evidence in the case that at the time of the making of the note upon which this suit is brought, the defendant, Harry S. Erdman, held himself out to the plaintiff or to its treasurer, Frederick G. Reinicker, as a co-partner in the firm of F. S. Erdman and Son, and the said plaintiff or its treasurer had reasonable grounds to believe that he was such partner of the firm, which he believed so to exist, and had no knowledge to the contrary, then the plaintiff is entitled to recover against the defendant the amount of said note with interest from the date thereof to date of verdict, less such sum or sums as the jury may find to have been paid thereon notwithstanding, the jury may find that the said Harry S. Erdman was not, in fact, a partner in said firm of F. S. Erdman and son by any contract of partnership. (*Granted.*)

The cause was argued before BRISCOE, BURKE, THOMAS, PATTISON, URNER and STOCKBRIDGE, JJ.

*J. Edgar Gans* and *Vernon Cook,* for the appellant.

*Thomas Burling Hull,* for the appellee.

ERDMAN vs. TRUSTEES EUTAW M. P. CH. 597

Md.]                        Opinion of the Court.

BRISCOE, J., delivered the opinion of the Court.

This suit is brought by the plaintiff against the defendant, individually and as surviving partner of F. S. Erdman & Son, to recover on the following described promissory note:

"Baltimore, December 28, 1910.

Four years after date I promise to pay to Trustees of Eutaw Methodist Protestant Church the sum of five hundred dollars ($500), with interest.

(Signed)    F. S. Erdman & Son.

Endorsed: Interest paid April 1st, 1912, $30.00."

The declaration, after declaring on the six common counts in assumpsit, by the seventh count alleges: And for that the defendant, Harry S. Erdman, and Francis S. Erdman (now deceased), co-partners trading as F. S. Erdman & Son, during the lifetime of the said Francis S. Erdman, on the 28th of December, 1910, by their promissory note, now overdue, promised to pay to the plaintiff five hundred dollars, with interest four years after date, but did not pay the same or any part thereof, except one year's interest thereon paid by the defendant on April 1st, 1912.

The defendant pleaded, to the declaration, the general issue pleas, and also three special pleas. The third plea, denies the partnership; the fourth, that the signature "F. S. Erdman and Son," on the promissory note mentioned in the declaration, while in the handwriting of this defendant, was written by him at the request of his father, Francis S. Erdman, now deceased, and that said signature was made by this defendant for and on behalf of said Francis S. Erdman, and was not intended to bind this defendant individually, there being no co-partnership between the defendant and his father and the name "F. S. Erdman and Son" being the name under which said Francis S. Erdman, conducted his individual business, and the fifth plea, that there was no valuable consideration whatsoever for the giving of the promissory note on which the suit was brought.

The case was tried upon issue joined upon the defendant's first and second pleas, and upon issue joined on the plaintiff's replication to the defendant's third, fourth and fifth pleas, as set out in the record.

The judgment being for the plaintiff for the sum of $632.50, the defendant has appealed.

The questions for our consideration are presented by a single exception, and that is, to the action of the Court in granting the plaintiff's fourth prayer, and in rejecting the defendant's prayers. The defendant's special exception to the plaintiff's first and second prayers need not be considered because these prayers were refused by the Court. The same questions, however, are raised by the defendant's second and third prayers, and will be disposed of here.

The defendant sought by these prayers (the second and third) to withdraw the case from the consideration of the jury, upon the ground, first, that there was no evidence in the case legally sufficient to show a partnership as alleged in the declaration, between the father and son; second, that there was no evidence legally sufficient to show that the plaintiff in accepting the note, on which the suit was brought, relied upon the belief that the defendant was a member of the firm of F. S. Erdman and Son.

These prayers were properly refused, because they involved and contained questions of fact, to be submitted to the jury upon proper instructions from the Court, and to be ascertained by the jury under all of the evidence in the case, and on the testimony in this case as set out in the Record could not have been withdrawn by the Court from their consideration, as was attempted by these prayers. *Thomas* v. *Green,* 30 Md. 1; *Whiting* v. *Leakin,* 66 Md. 255; *Fletcher* v. *Pullen,* 70 Md. 205; *Johnson* v. *Chrichton,* 56 Md. 108.

The legal propositions in the case are presented by the defendant's rejected first prayer and by the plaintiff's granted fourth prayer, and may be resolved into two: first, whether there was sufficient consideration for the making or giving

of the promissory note; second, whether the note sued on was so executed, as to be binding on the members of the firm of F. S. Erdman and Son.

By the defendant's first prayer the Court was asked to rule, as a matter of law, that there was no evidence legally sufficient to show any consideration for the making or giving of the promissory note on which the suit was brought and under the pleadings and evidence the verdict must be for the defendant. This prayer was properly rejected.

The consideration for the note was a subscription contract of five hundred dollars which had been made by Francis S. Erdman, the father, with the trustees of the Eutaw M. P. Church for the purpose of paying off a building debt, which had been incurred for the erection of a new church building. Francis S. Erdman was a member of the board of trustees and also a member of the building committee of the church.

The subscription contract was made on the 31st of October, 1909, and entered upon the books of the church. The trustees subsequently borrowed the sum of two thousand dollars on this and other subscriptions to the church to pay off their indebtedness incurred for the erection of the church building. The Erdman subscription was not paid in cash, but was fully recognized by him, before the execution of the note by the payment on the 7th day of November, 1910, of one year's interest thereon.

Subsequently, on December the 28th, 1910, the note in question and here sued on, was executed at the house of the father, and delivered to F. G. Reinecker, the treasurer, of the church.

The testimony shows, that the note was drawn by the defendant, the signature, F. S. Erdman and Son, was written and attached by him, and the note was delivered as executed, at the request of the father, by the assent of the defendant, in the presence of the father. The witness Reinecker, treasurer of the church, testified as follows: I was sent for and told to come up, that Uncle Frank wanted to see

me, and I went there and up in his room, and Frank Erdman said: "I have this note for you for the church." I said "all right," and his son went to the desk and got the note out and gave it to me, and I looked over the note and I saw how it was signed, and I said: "Uncle Frank, do you know how it is signed?" He said: "Yes, I had it signed that way purposely." Harry Erdman was present and said nothing. He handed me the note. The note was given in payment of a subscription that Francis S. Erdman made on October 31st, 1909, the date the new church was opened.

He also testified on cross-examination: I knew that the subscription of the father, Francis S. Erdman, was an individual subscription, and that his son originally had nothing to do with it. When the note was handed me I observed it was signed "F. S. Erdman and Son." I was surprised at his giving it in that shape, as I expected an individual note. I called attention to the fact that it was signed "F. S. Erdman & Son," and he said that was all right. He did not give me any reason for that. The note was not signed while I was in the room. It was ready for me in a desk when I arrived. I endeavored to collect interest when the year was up. We were paying interest and we collected our interest every year so as to have one balance the other. I went to Harry Erdman for this interest, after his father's death; gave him a bill for it. I said: "Harry, here is a bill for the interest," and he gave me the money and I reported the bill. He didn't say anything; he paid me the money. The next year I gave him another bill for interest. He said he was not going to pay it. I said I thought he was making a very great mistake. He said he didn't think so. That was all that passed between us.

The policy of the law, to sustain subscription contracts of the character of the one here in question, is clearly stated by this Court, and by other appellate Courts, in a number of cases.

In *Gittings* v. *Mayhew,* 6 Md. 113, this Court held, in a somewhat similar suit, that as the party had authorized others by the subscription to enter into engagements for the accomplishment of the enterprise the law requires that he should save them harmless to the extent of his subscription. 1 *Parson on Contracts,* 378, 453; *Story on Contracts,* sec. 453.

In *Trustees M. E. Church* v. *Garvey,* 53 Illinois, 402, in a suit to recover upon a church subscription, the Court held, that where a person subscribes to a public enterprise and work is done, money expended or liability incurred, on the faith of such subscription the contract becomes binding and is enforceable. MR. JUSTICE LAWRENCE, in delivering the opinion of the Court, said: "As a matter of public policy, courts have been desirous of sustaining the legal obligation of subscriptions of this character, and in some cases, as in *George* v. *Harris,* 4 N. H. 535, have found a sufficient consideration in the mutuality of the promises, where no fraud or deception has been practiced. But while we might be unwilling to go to that extent, and might hold that a subscription could be withdrawn before money had been expended or liability incurred, or work performed on the strength of the subscriptions, and in furtherance of the enterprise, yet, we are of the opinion the present case falls fairly within the rule established in this Court and admitted by counsel. Although the church trustees have not increased their liability, they have on the faith of this subscription incurred a new liability to new parties. They have borrowed money, relying upon this subscription as a means of payment, and the fact that they have used the money to discharge a pre-existent debt, does not change the fact that they have incurred a new and different liability. The lender may have relied for his payment not merely on the credit of the trustees in their corporate capacity, but on the subscription list in their hands. The record shows a sufficient consideration and the judgment should have been for the plaintiffs."

And to the same effect are the cases of *McClure* v. *Wilson,* 43 Ill. 356, and *United Presbyterian Church* v. *Baird,* 60 Iowa, 237.

There can be no doubt, then, that upon authority, the subscription contract, in this case was a valid and a binding one, so far as Francis S. Erdman, the father is concerned and constituted a sufficient consideration to support the note, sued on in this case.

This brings us to the second question, and that is, whether the partnership note (assuming there was a partnership at the time of the execution of the note) is a valid and binding contract, and enforceable against the defendant or whether there is such a want of consideration to support the note, as to release the defendant, the surviving partner.

The general rule, apart from the statutes of the several States, is to the effect, that a partnership note given in payment of the individual debt of one of the partners is binding on the partnership, if the note is given upon the authority of the other partners or they acquiesce or recognize it as an obligation of the firm.

In *Johnson* v. *Chrichton,* 56 Md. 108, it is said: "If the partner dealing on individual account delivers a promissory note of the partnership in payment of his private debt, this of itself carries notice to the party receiving it, that it is a partnership security. * * * Such transactions at once convey notice, and devolve upon the individual creditor, seeking the benefit of such agreements, the burden of showing that the other partner or partners authorized or assented to what, without proof of such authority or assent, would clearly appear to be a misappropriation of the partnership funds, and therefore a fraud upon the partnership. This is both in accordance with the dictates of common sense and of settled judicial decision. *Locke* v. *Lewis,* 124 Mass. 1. The question of the authority or assent of the other members of the firm to the transaction involved, is one for the jury; and it should be submitted upon proper instructions from the Court." *Brown*

ERDMAN vs. TRUSTEES EUTAW M. P. CH. 603

Md.]                          Opinion of the Court.

v. *Duncanson et al.,* 4 H. & McH. 351; *Porter* v. *White,* 39 Md. 613; *Thomas* v. *Green,* 30 Md. 1; *Whiting* v. *Leakin,* 66 Md. 255; *Fletcher* v. *Pullen,* 70 Md. 205.

In *Jones v. Booth,* 10 Vermont, 272, in an action upon a note, signed by one of the two partners in the partnership name, for a purpose not connected with the partnership, the Court said: "The plaintiff admits that the mere relation of partners did not of itself authorize Austin (one of the partners) to bind the defendant (another partner) by this note. But he insists that one partner may authorize his fellow to bind him in such a case and of this there is no doubt. He insists further that a subsequent recognition of the note by the co-partner, as a subsisting obligation upon him, is evidence of such authority, and of this, there is little doubt. *Osborn* v. *Osborn et al.,* 36 Mich. 48; *Gansevort* v. *Williams,* 14 Wend. 133; *Mercien* v. *Andrus,* 10 Wend. 261; *In re Stewart & Aiman,* 62 Iowa, 614.

In *Parsons on Partnership,* 4th Ed., 1893, sec. 134, bottom page note, it is said, as supported by authority that where a partner gives the partnership name for his individual debt, the assent of his co-partners to the act or their ratification of it may be implied from circumstances, and need not be proved by express agreement. 14 Wend., 133, *supra*; *Noble* v. *McClintock,* 2 W. & S. 152; *Chazournes* v. *Edwards,* 3 Pick. 11; *Abpt* v. *Miller,* 5 Jones, 32; *Brewster* v. *Mott,* 5 Ill. 378; *Powell* v. *Messer,* 18 Tex. 401; *Kemeys* v. *Richards,* 11 Barb. 312; *Wheeler* v. *Rice,* 8 Cush. 205. Nor need there be any new and independent consideration for the act of the partners ratifying and promising to be bound by the act of a co-partner who has wrongfully used the partnership name for his own benefit. *Commercial Bank* v. *Warren,* 15 N. Y. 577; *Gansevort* v. *Williams,* 14 Wend. 133.

The contention of the appellant, that the partnership note, in this case, was a mere voluntary contract without consideration, because there was no new consideration to support the promise made by the firm to pay the individual debt of one

of its members, is not sustained by the weight of authority in this State or by the adjudged cases in other jurisdictions.

The facts of the cases of *Goodenow* v. *Jones,* 75 Ill. 48, and *George* v. *Wamsley,* 64 Iowa, 175, relied upon by the appellant, are unlike those of this case.

In the present case, the defendant not only assented to the giving of the partnership note, in payment of the father's debt, but he actually drew and signed the note himself and delivered it to the treasurer of the church. He afterwards after the death of his father recognized it as a debt of the firm by the payment of one year's interest on it.

The plaintiff's fourth prayer, we think, properly submitted the law of the case, the Reporter will set out this prayer, in his report of the case, and as we find no reversible error in the rulings of the Court, the judgment will be affirmed.

*Judgment affirmed, with costs.*