LOUIS BLAUSTEIN, Trading as American Oil Company,

vs.

CLARENCE H. OLDFIELD and WALTER F. OLD-FIELD, Co-Partners Trading as Oldfield Automobile Shop; WALTER F. OLDFIELD, Individually, and MARY OLDFIELD, His Wife.

*Contract as Member of Firm—Extension of Credit—Pecuniary Liability.*

Where the conduct of a party was such as to induce a reasonable belief on the part of others that he was a co-owner of the business which he helped to establish and conduct, he renders himself liable for debts of the business.    p. 168

That a written contract with plaintiff purported in terms to be the contract of defendant and his brother, trading under a firm name, and was signed by the defendant individually as well as in the firm name, imposes on defendant the burden of showing that plaintiff, at the time the contract was made, knew that defendant was not a partner, but merely an employee.    p. 168

If plaintiff was led by defendant's conduct to give credit to a firm on the supposition that defendant was a partner therein, it is immaterial that defendant was merely an employee of the firm.    p. 169

If plaintiff extended credit to the firm with which defendant was associated, but in which he was not a partner, on the understanding that defendant should be "responsible for half of the account," he cannot be held liable for the whole.    p. 169

*Decided November 21st, 1919.*

Appeal from the Circuit Court for Howard County, in Equity (Forsythe, J.).

The cause was argued before Boyd, C. J., Burke, Thomas, Pattison, Urner, Stockbridge and Adkins, JJ.

*James Clark* and *Morris A. Rome,* for the appellant.

*Joseph L. Donovan,* for the appellees.

URNER, J., delivered the opinion of the Court.

On March 28, 1917, the parties to this appeal executed a contract which is, in part, as follows:

"Louis Blaustein, trading as the American Oil Company, main office, Baltimore, Maryland, does hereby lease unto Clarence H. Oldfield and Walter F. Oldfield, trading as Oldfield Automobile Shop, one metal tank for storage of gasoline, with pipe lines and pump for said tank, to be placed and located by the lessee upon their premises at Ellicott City, for the receipt and delivery of gasoline, for the period of two years from April 15th, 1917, to April 15th, 1919, inclusive, at the reduced rental of one dollar ($1.00) per year, payable to the said company on the last day of this lease, or of any renewal thereof, which reduced rental the said lessee hereby agrees to pay, and in consideration thereof, also to receive on consignment from, and to sell and deliver for said company exclusively, gasoline to trade who call at the premises aforesaid during the same period, at prices and terms to from time to time fixed and determined by the said company, and to pay over to the said company weekly the proceeds of all sales and the said company hereby agrees to pay the lessee for services in selling such supplies a commission of one cent per gallon."

At the same time the following supplemental agreement was executed:

"In consideration of gasoline tank and pump being leased by Louis Blaustein, trading as the American Oil Company, to Clarence H. Oldfield and Walter F. Oldfield, trading as Oldfield Automobile Shop, as per separate lease and gasoline agreement signed this day, it is also understood that Clarence H. Oldfield and Walter F. Oldfield, trading as Oldfield Automobile Shop, is to purchase their exclusive lubricating oil requirements from the American Oil Company during the period covered by other lease and at the American Oil Company's regular public garage prices, whatever they may be at the times of deliveries."

Both of the agreements were thus signed:

         "American Oil Company,    (Seal)
         "By L. Blaustein.
         "Oldfield Automobile Shop    (Seal)
         "C. H. Oldfield.
         "W. F. Oldfield."

In pursuance of the two contracts, deliveries of gasoline and oil were made from April 7th to September 17, 1917, at prices aggregating $1,907.90, upon which payments were made to the amount of $1,669.51, leaving a balance due of $352.97. On September 21st, 1917, Clarence H. Oldfield abandoned the business, and on November 30th following Louis Blaustein, trading as the American Oil Company, filed the pending bill of complaint to have vacated certain deeds dated November 8th, 1917, by which Walter F. Oldfield conveyed his property to his wife, the theory of the bill being that the conveyance was in fraud of the rights of the plaintiff as a creditor of the grantor, who was charged with liability as a partner for the balance claimed on account of gasoline and oil delivered to the Oldfield Automobile Shop. The answer denies that the defendant, Walter F. Oldfield, was a partner in the business for which the material in question was furnished, or that he was responsible in any way for the debt which the bill seeks to enforce, but alleges that the defendant was merely an employee of his brother, Clarence H. Oldfield, who was the sole proprietor of the Oldfield Automobile Shop, and to whom the defendant had leased the property on which the business was conducted.

The evidence in the case proves conclusively that no partnership in fact existed between the defendant and his brother, that the latter was the exclusive owner of the business, and that the defendant's only relation to it was that of employee and lessee, as alleged in the bill of complaint. The only issue in the case is whether the plaintiff knew of the defendant's real relation to the business, and is therefore not entitled to rely upon the theory that he was a partner, even though the contracts which he signed were clearly sufficient in them-

selves to justify that inference. Upon this question the evidence is conflicting.

The testimony of Joseph B. Harig, Jr., a salesman for the plaintiff, was to the effect that on the day of the execution of the agreements Clarence and Walter Oldfield came to the office of the plaintiff, and together conferred with Jacob Blaustein, Jr., the plaintiff's son and manager, in reference to the lease of a gasoline tank; that the subject of Walter Oldfield's responsibility "for the bills" was mentioned, and that with this object in view the lease was drawn in the names of both of the brothers. Jacob Blaustein, Jr., testified that Clarence and Walter Oldfield told him, on the occasion just referred to, that "they wanted to go into the garage business in Ellicott City to be operated in the name of the Oldfield Automobile Shop." "They wanted to know whether or not we would lease them a tank." The witness said that he asked Clarence Oldfield as to his financial standing, and he stated that he was not worth anything, and in reply to a similar question Walter Oldfield said that he owned property at Ellicott City. They were then asked, as the witness testified, whether they were "both going into this business together," and they said "Yes." With this understanding, Mr. Blaustein stated, the lease and oil agreements were dictated by him to his stenographer in the presence and hearing of the two brothers, and were read to them after being written, and were afterwards executed in the manner already indicated. Mr. Blaustein further testified: "Upon the assurance of Mr. Walter F. Oldfield that he was the owner of the property and a member of the firm, a weekly line of credit was extended to them. It was on account of this fact, that he owned the property, that the credit was given. I knew that Mr. Clarence H. Oldfield was not worth anything."

Clarence H. Oldfield was not a witness in the case, but Walter F. Oldfield, the defendant, testifying in answer to an inquiry as to the circumstances under which he signed the gasoline contract, said: "I went in there and Mr. Blaustein talked to Clarence; he did not talk to me. Him and Clarence

talked the situation over, and he pulled from his desk that contract; it was already drawn up. He pulled it out of his desk, and then he sat down and read it. Then he wanted me to sign the contract. Clarence read the contract over, and it was satisfactory to him. He wanted me to sign the contract, and I told him that there was no use of my signing it. Then he said to me that if we put our gasoline tank out there on your property and he don't pay you your rent, then you can attach our gasoline tank. He said that it was on this account that he wanted me to sign the contract. Under these circumstances, I did sign that agreement. Mr. Blaustein thoroughly understood that I was not a partner in the business. He understood that anything that came out there came to Clarence H. Oldfield. He knew that it did not go to me at all." In reply to the question, "What was your reason for signing this agreement?" the defendant said: "Simply as I told you. As I understood it, I signed the agreement so that Mr. Blaustein could get his gasoline tank without going into court for it, if Clarence did not pay me the rent." No explanation was made by the defendant as to why he signed the separate agreement for the purchase of oil, the deliveries of which did not involve the use of the tank.

The testimony shows that the account of the plaintiff for the gasoline and oil furnished under the contract was kept in the name of the Oldfield Automobile Shop, that all payments on the account were made by Clarence H. Oldfield, and that either he or the defendant would sign the receipts taken by the plaintiff's tank-wagon drivers for deliveries of gasoline. Occasionally the defendant's wife signed such receipts. Mr. Blaustein testified that the defendant sometimes ordered oil and gasoline by telephone. Upon this point the defendant simply stated that he did not order any goods on his own account. The sign displayed at the place of business where the deliveries were made consisted of the words "Oldfield Automobile Shop." There was stationery used in the business on which was printed the name of C. H. Oldfield as proprietor, but this fact does not appear to have ever come to the atten-

tion of the plaintiff or any of his agents.   In the actual course
of dealing pursuant to the contracts there was nothing to ap-
prise the plaintiff that the defendant's relation to the business
was different from that which the contracts disclosed, unless
a contrary inference should be drawn from the fact that Clar-
ence H. Oldfield personally made the payments credited on
the account against the Oldfield Automobile Shop and was
given receipts therefore in his own name.   As to this Mr.
Blaustein testified: "Mr. Clarence H. Oldfield was the man
who came into the office to make settlement.   When a cus-
tomer or a member of a firm makes a settlement, the receipt
is written in his name."   The receipt might have been writ-
ten for either one of the partners, it was not as the bill was
rendered.   It is simply a receipt showing that Clarence H.
Oldfield came into the office and paid the money."

On November 14, 1917, the defendant had an interview
with Mr. Blaustein at his office in reference to the question
of the liability of the former for the debt now in suit.   The
next day a letter was written by Mr. Blaustein to the defend-
ant as follows:   "In line with our conversation of yesterday,
we are enclosing copy of lease which was signed by you and
your brother in our offices.   As we explained to you, it has
always been our understanding that you and your brother
were together in business and naturally we hold you responsi-
ble for half of the accounts.   We feel certain that after due
consideration you will understand our position in this matter
and will pay your share of the account.   At any rate, please
advise us so we may know exactly how to proceed with this
claim."

This letter was offered by the defendant as proof that the
plaintiff could not have regarded him as a partner in the
business, because otherwise it would not have been stated that
he was held responsible for only half of the debt.   It was
testified by Mr. Blaustein that this proposal had been made
in his interview with the defendant, and was repeated in the
letter, merely for the purpose of effecting a compromise.   As
the interview is described by the defendant, and by his wife,

who was present, there was nothing in the nature of a compromise in the proposition that he pay half of the claim. But according to the testimony of Mr. Harig, who was also present at the interview referred to, the defendant was told that he was expected to pay the account, and he practically admitted the bill, but said that he could not pay it at that time.

The preponderance of the evidence, we think, supports the theory that the defendant sustains some liability to the plaintiff on account of the indebtedness incurred under the contracts to which he was a party. The terms of those agreements as executed, were consistent only with the understanding that he was interested jointly with his brother in the automobile shop for which the gasoline and oil contracted for were to be supplied. It would never be supposed, from a reading of the gasoline tank contract, that the defendant had been made a party to it solely for the purpose of giving his assent to the eventual removal of the tank which was to be installed on his property. A very different form of agreement on his part would have been appropriate to that purpose. Besides, as already remarked, no such reason is suggested, or could be considered, as an explanation of the fact that the defendant also joined in the execution of the agreement relating to the purchase of the lubricating oil for which the use of the tank was not required. As to the circumstances under which the contracts were negotiated and executed, and as to the statements then made in regard to the extent of the defendant's interest and responsibility, there are two witnesses who testify that he represented himself to be jointly interested in the business as against his own individual testimony to the contrary. The evidence as to the subsequent transactions between the plaintiff and the other parties to the contracts is not sufficient, in our opinion, to overcome the strong probative effect of that documentary proof that the defendant was intended to be treated as having a joint interest in the projected enterprise. In view of the terms of the agreements, and having regard to the weight of the other evidence in the case, it seems clear to us that the conduct of the defendant was such

as to induce a reasonable belief on the part of the plaintiff that he was a co-owner of the business which he helped to establish and conduct and was not wholly exempt from liability for debts therein contracted. In this aspect of the case it can make no difference, so far as the plaintiff's rights are concerned, that the defendant did not in reality have the relation to the business which the contracts represented. *Lighthiser* v. *Allison,* 100 Md. 105; *Fletcher* v. *Pullen,* 70 Md. 213; *Thomas* v. *Green,* 30 Md. 1; Acts of 1916, Ch. 175, Sec. 16 (Code, Art. 73A, Sec. 16). It seems reasonably certain that the plaintiff entered into the contract on the faith of the defendant's financial responsibility.

But it is difficult to conclude that the plaintiff is entitled to hold the defendant to the full measure of a partner's liability in view of the letter in effect stating that in accordance with the understanding which the plaintiff always had as to the defendant's connection with the business, he was "responsible for half of the account," and that this was his "share" of the indebtedness. The explanation that this was merely a compromise proposal is not satisfactorily supported by the wording of the letter or by the weight of the testimony. If, as the letter, indicates, the plaintiff depended upon the defendant's credit to the extent of only half of the amount of the sales of gasoline and oil to the Oldfield Automobile Shop, and if he understood that the defendant was responsible for only half of the debt thereby incurred, it would not be just to enforce against him a partner's liability for the whole indebtedness, in the absence of firm assets, when the proof clearly shows that in fact no such relationship existed. Upon the record before us, therefore, we have reached the conclusion that the defendant is liable for one-half of the amount for which recovery is sought in this proceeding, and that the plaintiff is entitled to the relief prayed in the bill to the extent necessary to secure the payment of that proportion of his claim.

> *Decree reversed, each party to pay one-half of the costs, and cause remanded to the end that a decree may be passed in conformity with this opinion.*