## MATTIE B. HIRST *v.* SALLY B. HOOPER
[No. 75, October Term, 1945.]

*Decided February 8, 1946.*

The cause was submitted to MARBURY, C. J., DELA-
PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL,
JJ.

*Thomas W. Simmons* appeared on the brief for the
appellant.

*V. Calvin Trice* on the brief for the appellee.

MARKELL, J., delivered the opinion of the Court.

This is a case in equity between a father (plaintiff,
appellee) and a daughter (defendant, appellant). Pend-
ing the appeal the plaintiff, Mr. Brannock, died at the
age of eighty-three. His administratrix, Mrs. Hooper,
another daughter, has been substituted as appellee. The
case now is legally, what it appears always to have been
actually, a controversy between the two daughters. The
father and the two daughters were the only witnesses.
The testimony was taken in open court. The court filed
a concise, comprehensive opinion and signed a decree
granting the plaintiff the relief prayed.

In 1926 the plaintiff acquired a lot in Cambridge. He
built a house, in which he and his wife lived until her
death on August 15, 1942. On June 5, 1935, he and his
wife executed a mortgage on this property to the de-
fendant to secure payment of $1,500, then borrowed by
them from her, and interest payable semi-annually. The
defendant lived in Baltimore, Mrs. Hooper in Cambridge.

When the mother died the defendant came to Cam-
bridge and stayed a few weeks with her father. By
arrangement between the daughters—and the father—

the father then left his house and went to live with Mrs. Hooper; his house was rented under the care and management of Mrs. Hooper; out of the rent she was to keep up all expenses, and pay the interest and taxes.

About September 15, 1944, the father decided to sell the property for $2,500. The defendant was notified that he wished to pay the mortgage·debt, *viz.*, the principal plus interest from September 15, 1944, the date of the last interest payment. She then asserted that interest for eight years was unpaid, and claimed the principal and eight years' interest.

The bill of complaint, filed November 27, 1944, alleges that all interest has been paid to September 15, 1944, tenders (by payment into court) $1,500 principal and $18.75 interest from September 15, 1944, to December 1, 1944, and prays that the defendant be required to accept the amount tendered and release the mortgage. The defendant in her answer denies that any interest was paid during the lifetime of her mother.

A bank, to which the daughter assigned the mortgage as collateral, was named in the bill as a party defendant. The bank has not appealed. On this appeal facts regarding the bank are immaterial and need not be mentioned.

Judge Henry in his opinion states the issue and reviews the testimony:

"Thus the issue in this case raised by the pleadings is whether the interest has been paid, or if not, has payment thereof been waived, or has the defendant been estopped from collecting such interest because of a gift of any unpaid interest.

"The complainant is a very old man, being in his eighty-third year and he testified with some difficulty and I am not certain that he thoroughly understood all that he said though I am certain that he believed to be true every word that he uttered. For the purpose of this case the important part of his testimony is in reference to interest payments. In reference to a question of his counsel as to whether or not any interest was

due on the mortgage he said, 'Not a cent that I know of. I didn't know I owed a dollar in the world,' and in answer to the next question testified that his daughter had never asked him for any interest up until the time of the sale of the property. Later in his testimony he again stated that at the time of his wife's death he did not owe his daughter any interest. Any actual payment of interest during the lifetime of Mrs. Brannock is denied by Mrs. Hirst and that denial must be taken as a correct statement of the fact in this case as far as any actual payment of money is concerned, and it is therefore necessary to consider carefully all of the testimony in reference to the mortgage and the interest thereon.

"As has been stated, up until the time of the death of Mrs. Brannock, on August 15, 1942, Mr. Brannock lived with her in the home covered by the mortgage, but almost immediately [*i. e.*, a few weeks] thereafter he moved to the home of his daughter, Mrs. Hooper, where he is now living. At this time it is shown by the testimony of Mrs. Hooper, that she and her sister, Mrs. Hirst, discussed the matter of their father's home and decided to rent it, Mrs. Hooper agreeing to collect the rent, keep up the expenses on the property, pay the interest and taxes and take care of her father. In this connection it is shown that they agreed to start from scratch, the past was not mentioned nor was there any mention of any interest on the mortgage.

"In pursuance of this understanding and agreement Mrs. Hooper collected the rent and commencing with check No. 1, dated May 8th, 1943, sent forty-five dollars each six months to Mrs. Hirst in payment of interest on the mortgage. Each check is signed 'J. J. Brannock (rent acct) by Sally B. Hooper,' and the checks (there are three of them filed as exhibits) are worded on their face, 'Int. J. J. Brannock mortgage from Sept. 15–42 to March 15–43,' Int. on J. J. Brannock mortgage from March 15–43 to Sept. 15–43, and Int. on mortgage J. J. Brannock from Sept. 15–43 to March 15–44. Each of

these checks is endorsed on the back by Mattie B. Hirst and Mary Cornell Hirst. During this period there is not the slightest evidence that Mrs. Hirst ever made any claim for interest back of the first of these checks, which was in accordance with the agreement as testified to by Mrs. Hooper, and Mrs. Hooper on her part as agreed upon has continued and is continuing to look after her father and to collect the rent for the house.

"A fourth check in the same sum as the ones already described was sent to Mrs. Hirst [on September 15, 1944] after the father had agreed to sell the home to Mr. Porter for $2500.00, and then for the first time, after about ten years, Mrs. Hirst made a claim for interest for the period of her mother's lifetime, and before depositing the fourth check made some alteration in that part of it which showed the period which it purported to cover, so that payment of this check was refused."

Before the fourth check was sent Mrs. Hooper telephoned the defendant about selling the property and releasing the mortgage; the defendant said she could not let the property go for $1,500 because she had so much in it. Under the decree the defendant can immediately collect the fourth check, together with the $1,518.75 paid into court.

The defendant testified: "Prior to my mother's death there was not any interest paid to me on the mortgage because they did not have it to pay and it was understood that I was to keep the home for them as long as they lived and keep the interest and taxes up, which I did. And my mother gave me the mortgage as a protection." She also testified that she never told her sister "about how much back interest there was"; "No one knew that but my mother and myself"; the "reference to her mother" was stricken out. The defendant did not explain how there could be any secret about the amount of back interest, if no interest had ever been paid, by gift or otherwise; or how she could "keep the interest up" for her father and mother except by waiver and

gift as it came due; or why payment of interest by Mrs. Hooper was begun from September 15, 1942 (when the father left his home) if interest was then due from the date of the mortgage. Under the mortgage the regular interest dates were June 5th and December 5th.

Judge Henry's conclusions from the testimony were:

"Looking at all of the facts and circumstances of this case I can not help but believe what is certainly most worthy and creditable on the part of the daughter of this aged couple, that is, that she meant not to collect any interest from her parents while they occupied this dwelling, that she loaned them the fifteen hundred dollars ($1500.00) * * * which she did not mean to be a gift because she took a mortgage to protect herself, but during all of the years * * * until the death of the mother no claim was ever made for any interest, no demand was ever made of the parents, and the father, the only one now [alive], definitely believes that no interest is now owed.

"If Mrs. Hirst had not intended this interest to be a gift representing her contribution to the support of her parents it would have been very easy for her to have said so to them or to have prepared some agreement evidencing such intent. She not only did not do this but even after the death of the mother and the renting of the house she agreed with her sister to start from scratch, made no mention of any unpaid interest to either her sister or her father and accepted checks showing payment of interest to a certain date without any question until the sale of the house. All of this conduct taken together raises, if not a conclusive presumption, at least it is nearly so, that the interest was meant and intended by her to be a gift to her mother and her father each year just as much as if she had each six months handed them forty-five dollars ($45.00), in cash to expend as they might wish.

"I feel unable to believe that Mrs. Hirst, during the lifetime of both the parents and during their occupancy

24

of the home, intended anything but a gift of this interest, because otherwise there was accumulating such a burden of interest against them as they could never have hoped to lift, and instead of being in the position of a child lending a helping hand to her aged parents as they approached the sunset of life, Mrs. Hirst would find herself in the position of any creditor demanding the last penny of interest allowed under the law of this State.

"If, during the lifetime of her mother and while both parents were living in the home Mrs. Hirst gave and intended to give this interest as an aid to their support, and the facts and surrounding circumstances of this case lead me to believe that she so intended [it] is now too late to recall such gifts."

We concur in this reasoning and in these conclusions. On a question of gift *vel non* the inferences to be drawn from words or conduct may be different in cases of persons in intimate family relations from those in other cases. *Beard v. Beard*, 185 Md. 178, 44 A. 2d 469; *Blenard v. Blenard*, 185 Md. 548, 45 A. 2d 335; *Williston on Contracts* (Rev. Ed.), Secs. 36, 91 A.

If the evidence did not show gifts of interest as it became due, the family arrangement between the two daughters in September, 1944, concerning care of their father, management of his property, and payment of interest, would constitute a contract, supported by a sufficient consideration, by which any back interest was then discharged. *Ogle v. Tayloe*, 49 Md. 158, 177; *Cf. Gittings v. Mayhew*, 6 Md. 113, 130-132; *Erdman v. Trustees of Eutaw M. P. Church*, 129 Md. 595, 600-602, 99 A. 793; *Williston on Contracts*, Sec. 116.

*Decree affirmed, with costs.*