Barnett, Administrator, *v.* The Franklin College.

No. 1,036.

BARNETT, ADMINISTRATOR, *v.* THE FRANKLIN COLLEGE.

PLEADING.—*Practice.*—*Motion to Strike Out Part of Complaint.*—The overruling of a motion to strike out parts of a complaint is not available error.

CONTRACT.—*To Pay Money After Death.*—A contract to pay money after the death of the promisor is enforcible if based upon a valid consideration.

SAME.—*Promise to Pay Money to College After Death.*—*Consideration.*—*Conditions.*—*Acceptance.*—*Trust.*—An instrument promising to pay to a college a certain sum of money six months after the promisor's death, "to be used as the capital stock of said institution is used, the principle to be loaned on real estate, and the interest only to be used for current expenses of the college," which is accepted by the college upon the terms and conditions therein specified, imposes an enforcible trust and is supported by a good consideration.

SAME.—*Endowment of Chair.*—*Condition Precedent.*—Where an instrument promises to pay to a college, after the promisor's death, a sum of money in consideration of the endowment of a professorship in a certain name, the acceptance of the instrument creates an enforceable trust, but the trustee is not bound to name the chair in advance of the collection of the money promised.

SAME.—*Pleading.*—*Consideration.*—A plaintiff may set up in his complaint as many considerations as he chooses for the instrument declared on, and it is sufficient to establish one, if it be valid and adequate.

SAME.—*Special Finding as to Consideration.*—*Conclusion of Law.*—Where the facts and circumstances under which a contract was made are set out in a special finding and disclose a sufficient consideration underlying the contract, a conclusion of law that there was a good consideration is justified without specifically naming it.

SAME.—*Corporation.*—*Power to Contract.*—A corporation has implied power to make any contract that may be reasonably calculated to further the purpose of its incorporation, and that is not expressly forbidden by law.

From the Jackson Circuit Court.

*W. S. Sherley, R. M. Miller, H. C. Barnett, G. M. Overstreet, J. Overstreet, W. J. Buckingham* and *E. F. White,* for appellant.

*W. C. Thompson, J. C. McNutt, T. W. Woollen* and *D. W. Howe,* for appellee.

Barnett, Administrator, *v.* The Franklin College.

REINHARD, J.—The appellee filed a claim against the estate of appellant's decedent, on two endowment bonds alleged to have been executed by the decedent to the appellee, July 2, 1887, and August 15, 1888, respectively, the first of which was payable six months, and the second twelve months, after the death of said decedent.

The amended complaint, or statement of claim, is in two paragraphs.

Appellant filed certain motions to strike out portions of the averments of each paragraph of the complaint, which were overruled, and the appellant thereupon demurred separately to each paragraph of the complaint. The demurrer was overruled, and appellant excepted.

Answers and replies were filed, and the cause was tried by the court, resulting in a finding and judgment for appellee for the amount of the bonds.

The court, at the request of the parties, made a special finding of the facts, and stated its conclusions of law thereon, to each of which the appellant excepted.

The overruling of the motion to strike out portions of the complaint was not an available error. *Garn* v. *Working*, 5 Ind. App. 14.

The specific objection urged against the sufficiency of the complaint upon the demurrer is that it shows affirmatively that the instruments which are the foundation of this claim were executed without any consideration. It is contended that the bonds are at most but a promise to pay money as a gift, and, this being so, such promise may be revoked at any time, and that death works a revocation.

It is conceded by appellant's counsel, that an executory contract to pay money after the death of the promisor is enforcible, if it is based upon a valid consideration; but counsel contend that this is not so in the absence of such consideration, and when the promise is

one to make a gift in the future.   That this is a correct statement of the law upon this subject, is also admitted by appellee's counsel.   But, it is insisted, on their part, that the bonds in suit are not mere promises to pay money as a gift, but that the obligations therein assumed are supported by ample and valid considerations, and that the instruments are, in fact, binding contracts between the parties.   If this contention can be upheld, it is plain that the ruling upon the demurrer was correct.

It is averred, in the statements of the claims filed, that the appellee is an institution of learning, duly incorporated under the act of the General Assembly of this State, entitled "An act concerning the organization and perpetuity of voluntary associations, etc., approved February 25, 1867; that the corporate objects of said institution are as stated in its articles of association to establish, maintain, and operate an institution of learning at Franklin, Johnson county, Indiana, in the interest of the Baptist denomination of the State of Indiana, to be known as Franklin College, and to be open to male and female students on equal terms; that amongst the by-laws of the institution defining the powers and duties of its board of directors is one providing, in substance, that the board shall appoint annually a finance committee, one of whom shall be the treasurer, who shall have charge of the endowment funds, examine all securities and decide upon the sufficiency thereof under such regulations as the board may order; that at the time of the execution of the bonds the decedent was the widow of James Forsyth, deceased, and that she, by her then name of Ellen N. Forsyth, executed said bonds, copies of which are filed with the claim.

The bond mentioned in the first paragraph is as follows:

"$5,000.—Endowment Bond.

"TRAFALGAR, IND., July 5, 1887.

"I, Ellen N. Forsyth, of Johnson county, Indiana, hereby bind myself, my heirs, devisees and representatives, to pay to Franklin College, of Franklin, Johnson county, Indiana, the sum of five thousand dollars. Said sum to be paid six months after my death, without interest, without relief from valuation or appraisement laws, and to be used as the capital stock of said institution is used, the principal to be loaned on real estate, and the interest only to be used for current expenses of the college.     (Sig.)    ELLEN N. FORSYTH.

"Attest: ELIZA E. CARR."

It is further averred that these bonds were accepted by the appellee upon the terms and conditions therein specified, which acceptance was duly entered of record upon the records of the institution.

Other considerations are averred in the statements, viz: That on the faith of these and other bonds the appellee expended money and incurred liabilities in anticipation that the bonds would be paid.

In the second paragraph, the additional averment is contained, concerning the instrument there declared upon, that the appellee relying upon the bond as aforesaid executed by the decedent, Ellen N. Forsyth, and in expectation that it would be paid at maturity, did likewise endeavor to raise, by subscriptions and otherwise, a sufficient amount required under its rules and regulations to authorize the naming of one of its unendowed professorships, with the view and for the purpose, when such amount should be raised, of applying the same upon the endowment of such professorship, and naming the same the "James Forsyth Professorship," and, in so doing, did do much labor, and did expend much money, which it would not have done and expended but for its reliance upon said bond, executed by the de-

cedent, and upon the expectatation of its payment at maturity.

The bond declared upon in the second paragraph is the same as that in the first, except that it is dated August 15, 1888, and is payable twelve months after the decedent's death, and that across the top of it are written the words: "Given to complete James Forsyth Professorship." The averments of the two paragraphs are substantially alike with the exceptions named. This paragraph also sets out an additional section of the by-laws providing that anyone giving the sum of $20,000 or more, in a manner to satisfy the financial committee, may name any unendowed professorship and enjoy the credit connected therewith, the board reserving the right to increase the endowment fund or to supplement the proceeds of the same in any sum that it may deem necessary or desirable.

It will be noticed that the bonds contain a stipulation that the money which the appellant's decedent promised to pay is "to be used as the capital stock of the institution is used, the principal to be loaned on real estate, and the interest only to be used for current expenses of the college." And it is averred, as we have seen, that these bonds were accepted by the appellee upon the terms and conditions specified, which acceptance was duly entered of record by the appellee. This provision in the bond, and the averment of acceptance, not to speak of the further allegation that the claimant had fully performed all the conditions on its part to be performed, and had at all times been and still was ready and willing to apply the proceeds of said bonds to the purposes and objects therein specified, are sufficient of themselves, and in the absence of the averment respecting the expenditure of money, and incurring of liabilities for improvements, in anticipation of the payment of

these and other bonds, to show a valid consideration for the promise contained in the instruments in suit, and to render the complaint, or statement of claims, and each paragraph thereof, sufficient to withstand the demurrer.

The case of *Garrigus, Admr.,*v. *Home Frontier, etc., Missionary Soc.,* 3 Ind. App. 91, bears a strong analogy to the case at bar upon the question of the sufficiency of such a consideration. In that case, the society filed a claim against the estate of Elizabeth Storer, deceased, on an instrument in the form of a note, by which she had promised to pay to said society, out of her estate, one month after her death, the sum of $600 "to advance the cause of missions, and to induce others to contribute for that purpose." A demurrer having been overruled to the claim, it was urged, on appeal to this court, that the instrument was without sufficient consideration, and that the action could not be maintained. This court ruled, however, that the promise could not be held void for want of consideration, citing in support of its ruling the cases of *Johnston* v. *Wabash College,* 2 Ind. 555, and *Roche, Admr.,*v. *Roanoke Classical Seminary,* 56 Ind. 198, in which cases instruments of a similar character to those in the present case were adjudged to be founded upon a sufficient consideration to sustain an action for their collection. In the case of *Roche, Admr.,* v. *Roanoke Classical Seminary, supra,* the Supreme Court expressly held that the instrument required no further consideration to support it than "the accomplishment of the object in aid of which the money was promised," which, in that case, as in this, was to go to the endowment fund of an institution of learning.

The case of *Gammon Theological Seminary* v. *Robbins,* 128 Ind. 85, is easily distinguishable from the case before us, as well as from the cases cited. In that case

Barnett, Administrator, *v.* The Franklin College.

there had been no delivery of the instrument sued upon, and it contained a mere promise to *give* something. It was held not to be a valid gift *inter vivos*, as there had been no delivery to the payee, and as the promise was purely one to make a gift, and not a contract.

In the case at bar, there had not only been a delivery of the instrument, but it is expressly averred that the same had been accepted upon the terms stipulated, and that the acceptance had been entered of record by the appellee, to say nothing of the difference between a promise to *give* something in the future and an obligation to pay upon a valid consideration. The principle upon which promises of the character of those embraced in the present case are held to be valid is the reciprocal undertaking on the part of the promisor to pay and the promisee to perform something of value to the promisor, though the value may only be of indirect benefit to the latter, such as the obligation in the present case, that the appellee will hold and apply the funds promised in compliance with the terms of the contract. The benefit to the promisor to be derived from the performance of the promise may consist in the introduction into the community in which he resides, or is interested, something which will permanently enhance the general value of property in such community, or will elevate the moral or educational standing thereof. On the other hand, the consideration may lie in the assumption of certain risks and the incurring of expenditures upon the faith of the promise on the part of the obligee. In either case, and *a fortiori*, when the two are combined, the essence of the validity of the consideration is found in the promise to pay and the acceptance of the same. Nor will it do to say that there is no method of enforcing the performance of the duty or obligation assumed by the promisee in such cases. Courts of equity have ample powers to co-

erce the application of the funds arising from subscriptions or bonds, such as those in controversy, to the accomplishment of the purpose expressed in the contract. The acceptance of the obligation imposed creates a trust incapable of being subsequently renounced, and which may be enforced by proper legal proceedings. Nor is it necessary that the obligation of the trustee should be performed in advance of the payment of the fund, for the very purpose of the subscription is to enable such party to perform the duty imposed, and hence the mere retaining of the instrument, and the institution of suit upon the same, is regarded as sufficient *prima facie* evidence of such acceptance. *Carnahan* v. *Tousey*, 93 Ind. 561; *Coppage* v. *Gregg*, 127 Ind. 359; 1 Lewin Trusts, p. 200, and note 1; 1 Perry Trusts (4th ed.), section 259.

The views we have expressed as to the validity of such a promise as those sought to be enforced in this action, and the sufficiency of the consideration therefor, are fully supported by the decisions of able courts in other jurisdictions as well as by eminent writers. Thus it was said in *Amherst Academy* v. *Cowls*, 6 Pick. 427, which was an action on a note given to the college: "But it is quite sufficient to create a consideration, that the other party, the payee, should have assumed an obligation in consequence of receiving the note, which he was compellable either at law or equity to perform, unless the promisor should be able to show when sued, that the payee had refused, or was unable, or had unreasonably neglected to perform the engagement on his part; in which cases a defense might be raised on the ground of a failure of the consideration. The defense is not put upon that ground, and so it must be presumed that the corporate body to whom the promise is made, has applied its funds to the purposes for which they were raised, or is ready and willing to do it whenever the different contributors

to it shall have performed their engagements. In a court of equity of general jurisdiction, they could be compelled to discharge their duty. Without such a court they would be subjected to a loss of their charter, by refusal or neglect; for without doubt the Legislature are the visitors of all corporations founded by them for public purposes, where there is no individual founder or donor, and may direct judicial process against them for abuses or neglects which by common law would cause a forfeiture of their charters. It certainly then would seem that every contributor to the funds of a corporation authorized by law to receive moneys and apply them to the improvement, in most essential points, of the community to which he belongs, has his recompense in his share of the public good resulting from them; and if by means of his contribution, or his solemn promise to pay, the body to whom he has pledged his word should encounter expense, become under legal obligations, or otherwise pursue the intent and purpose of the Legislature in granting them the charter, this is a sufficient legal consideration to support such a promise. In this respect the principles of common honesty can not be at variance with the law of the land.''

In *Ladies' Collegiate Institute* v. *French*, 16 Gray, 196, which was a suit upon a college subscription, the court said: ''The second objection is that the promises of the defendants, being mere subscriptions to the funds of the institute, are without consideration, and, therefore, void. Subscriptions of this character have been made the subject of litigation in many instances, and the earlier cases in our reports contain *dicta* some of which have not been sanctioned by later decisions. But in the cases of *Amherst Academy* v. *Cowls*, 6 Pick. 427; *Williams College* v. *Danforth*, 12 Pick. 541, and *Thompson* v. *Page*, 1 Met. 565, their validity is established, and the ground

of it is definitely stated. It is held that by accepting such a subscription the promisee agrees on his part with the subscribers, that he will hold and appropriate the funds subscribed in conformity with the terms and objects of the subscription, and thus mutual and independent promises are made, which constitute a legal and sufficient consideration for each other. They are thus held to rest upon a well settled principle in respect to concurrent promises."

In *Troy Conference Academy* v. *Nelson,* 24 Vt. 189, which was also a suit upon a college subscription, it was said: "A legal consideration may consist in loss, damage or inconvenience, sustained by the party to whom the promise is made, or of benefit or advantage to the party promising. The amount of the consideration is unimportant, nor is it necessary, in this State, that it should appear upon the face of the contract or agreement, as it may be proved by testimony *aliunde.* The consideration for this agreement is found in the obligation imposed upon, and assumed by the trustees of this academy to see to, and make the application of this money as directed by the subscribers to this fund, so as to enable this institution to prosecute its duties of public instruction, for which it was incorporated, thus rendering this assumed liability and promise, the consideration of the promise of the other. To create this obligation upon this corporation or its trustees, it was not necessary that the instrument should have been signed by them, for that obligation arises from the acceptance of those subscriptions for that purpose, and which can be enforced at law and in equity. This was so expressly decided in the case of *Patchin* v. *Swift,* 21 Vt. 292. The court there say 'that the accepting and adopting a written contract by a party, who has not put his name to it, binds such party equally as if he had signed such contract.' "

In *Maine Central Institute* v. *Haskell*, 73 Me. 140, which was also a suit upon a college subscription, the court said: "But we are not prepared to admit that the subscription paper in this case 'is a bare, naked promise,' without any consideration whatever. It is true no consideration was actually received at the time of signing, but one is plainly implied, if not expressed, from the language used. The promise was of money for a specified purpose, 'to make up a building fund for said institution.' This purpose was ever recognized by the law as a public charity. The promise was made to a definite payee by name, one legally competent to take, incorporated for the express purpose of carrying out the object contemplated in the promise and therefore amenable to law for negligence or abuse of the trust. It is not, of course, binding upon the promisor until accepted by the promisee and may up to that time be considered as a revocable promise. *But when so accepted* and much more when the execution of the trust has been entered upon, when money has been expended in carrying out the purpose contemplated, it becomes a completed contract binding upon both parties; the promise to pay and at least the implied promise to execute, each being a consideration for the other."

The same rule has been adopted by the Kentucky court of appeals. *Collier* v. *Baptist Education Soc.*, 8 B. Mon. 68.

The case last cited was upon a note as follows:

"I hereby promise to pay to the trustees of the Baptist Education Society or their order, $250, as a donation, in five equal annual installments."

The court said: "The donation in this case was, therefore, authorized by law, and the law imposed upon the plaintiffs the obligation to use and appropriate it in car-

rying out the charitable and benevolent objects of the institution and the donor. In the execution of this note, then, there was on one side the obligation to appropriate this fund according to the provisions of the charter, and the promise to pay on the other. Liabilities were doubtless incurred upon the faith of it, and the note, viewed in connection with the law, which authorized it, shows, in our opinion, a sufficient consideration for its execution, and to estop the defendant to deny that there was no legal or valuable consideration."

The case last cited was followed in the similar case of *Kentucky Female Orphan School* v. *Fleming, Exr.*, 10 Bush. 234.

There is unquestionably a line of cases in other States which hold a contrary doctrine, but they are not approved or followed by the Indiana cases. See *Garrigus* v. *Home Frontier Soc.*, *supra*.

Our opinion is that the consideration in the obligation before us consists, not in the fact that others also made such promises, and that out of these mutual promises mutual and reciprocal obligations arose, but in the assumption of the duty or trust, on the part of the appellee, to apply the fund in accordance with the expressed and implied provisions of the bonds in suit.

It is further insisted, however, on behalf of appellant, that, under the statute constituting the appellee's charter, it had no power or authority to receive such contributions to its endowment fund as those sought to be here recovered.

Conceding, without deciding, that the act under which the appellee was incorporated (Acts 1867, p. 225) confers no express authority to receive gifts by way of property, either personal or real, the conclusion reached by appellant's learned counsel does not follow. Corporations have implied powers to make any contracts that

may be reasonably calculated to further the purpose of their incorporations and that are not expressly forbidden by law. *Wright* v. *Hughes,* 119 Ind. 324; 1 Morawetz Priv. Corp., section 336; Lawson Cont., section 126.

It is further urged against the appellee's right to recover on the second paragraph of the complaint, that the endowment of the professorship in the name of James Forsyth was a condition precedent to the collection of the bond, and, as this condition is not shown to have been complied with, the suit as to such second bond must fail. We are unable to concur in this view of the law. The endowment of the James Forsyth professorship, like the application of the funds, is a trust assumed by the acceptance of the bond, and such trusts, as we have already seen, may be enforced upon the failure of the trustee to perform them. That the performance of the trust is not a condition precedent, see *Northwestern Conference* v. *Myers,* 36 Ind. 375; Pierce Am. R. Law (2d ed.), 64.

It can not be sound law or reason to require the corporation to name the chair in advance of the payment of the bond, and subject it to the risk from the insolvency of the decedent's estate or otherwise, of losing the fund by virtue of which such endowment is to be made.

Our conclusion is that the court committed no error in overruling the demurrer to the complaint.

The remaining questions may be disposed of in ruling upon the exceptions of the appellant to the conclusions of law upon the special findings.

With reference to the bond set out in the first paragraph, it was found, amongst other facts:

"That the decedent executed said bond and delivered the same to one Norman Carr, who was 'duly appointed by the board of directors of said claimant, Franklin College, as the general agent of said college, with authority to solicit and receive subscriptions and endowment bonds

to and for and in behalf of said college;' that the decedent did 'execute and deliver to said Carr, as agent of said claimant, Franklin College, and for and in behalf of said Franklin College,' said bond; 'that afterwards, on July 9, 1887, said Carr delivered said bond to Barnet Wallace, who was then the treasurer of said claimant, and who, as such treasurer, received the same for and in behalf of claimant, and did, at the same time, make an entry of the receipt thereof, in one of claimant's records kept by him as such treasurer for that purpose, and designated stock and endowment register, and ever since then said bonds have been retained by said Wallace as such treasurer, and the same have been by him, with the knowledge and approval of the claimant's board of directors and stockholders, entered of record and included in his annual reports as such treasurer, to said board of directors and stockholders, as constituting part of the assets of claimant under the designation of *post mortem* endowment bonds.' ''

There is a similar finding of facts as to the bond set out in the second paragraph of complaint.

It is also found ''that when the first of said bonds was executed as aforesaid, said claimant had college buildings and a number of professors, but said buildings were wholly insufficient to supply the needs of the students and professors of said claimant.''

It was further found ''that there was no other or different consideration for the execution of the bonds sued on, or either of them, than such as appears or may be implied from the facts hereinbefore found.''

The conclusions of law were, in substance, that there was a good and sufficient consideration for each bond, and that appellee was entitled to recover the amount due thereon, and judgment was rendered accordingly.

These findings fully support the conclusions reached

by the trial court. What has already been said in this opinion concerning the sufficiency of the complaint is likewise applicable here. The execution and delivery of the bonds on the one hand, and the acceptance upon the other, on the terms and conditions therein stated, afford ample consideration for the promise to pay the sums named. Nor is there any variance or failure of proof as to the facts relied upon in the statement of the claim. We fully recognize the rule insisted upon by appellant's counsel, that a complaint must proceed upon some definite theory, and that a recovery may be had only according to the averments forming the gist of such pleading. But a plaintiff or claimant has a right to set up in his complaint or claim as many considerations as he chooses, and if he succeeds in establishing any one of them, which is valid and adequate, it is sufficient. While the facts found do not sustain the averment that the appellee incurred expenditures and liabilities upon the faith of decedent's promise, they do sustain the other considerations set up in the complaint, and whether such consideration is averred in express terms, or is implied from the import of the instruments declared upon, and the averments of acceptance and compliance with its terms and conditions, is immaterial. And, for these reasons, even if the allegations in the appellant's answers were fully proved, as insisted upon, they are no barrier to the appellee's recovery upon the facts found. Nor will the failure of the court to specifically name the consideration upon which the bonds were executed vitiate the conclusion.

The facts and circumstances under which the contracts were entered into are fully set forth in the finding, and these disclose with sufficient certainty the consideration underlying such contracts. They show that the first bond was executed upon the consideration that the

money, when paid, should form a part of the endowment fund of Franklin College, the principal to be loaned on real estate security, and the interest to be applied to the current expenses of the institution.

With regard to the second bond, the special finding shows that it was executed upon a like consideration, and upon the further one that an unendowed chair or professorship in said college was to be named the "James Forsyth Professorship." The acceptance of these conditions constituted a trust in the appellee, which is fully susceptible of being enforced in a court of equity, and we know of no reason for holding these considerations insufficient. The exceptions to the conclusions of law are, therefore, not sustained.

If we are correct in this conclusion, it will not be necessary for us to pass upon the alleged error of the court in overruling the demurrer to the answers. We have already expressed grave doubts as to the sufficiency of the answers. If these are bad, the reply was sufficient in any event. But, aside from this, even if an error was committed in a ruling upon the sufficiency of the answer or reply, such error is harmless if the facts found support the substance of the averments of the complaint, and the merits of the cause have been fairly determined, as we think they have. R. S. 1894, section 348.

Judgment affirmed.

Filed May 10, 1894.