CENTRAL MAINE GENERAL HOSPITAL

*vs.*

CHARLES B. CARTER ET ALS., Exr's.

Androscoggin.    Opinion March 3, 1926.

*An oral offer to give a certain sum of money for a specific purpose named imposes an obligation to devote the fund when received to that particular purpose and an implied promise so to do, which constitutes a valid consideration for the promise to give, which becomes a binding promise upon acceptance, though such offer may not be consummated as a gift inter vivos, nor a demand made during the lifetime of the promisor.*

*It does not follow that an acceptance of an unconditional offer for the general purposes of a charitable institution will satisfy the requirement of a valid consideration.*

In the instant case only two of the exceptions require special consideration, as the record does not show that the defendants were aggrieved by the rulings on which the other exceptions are founded.

The proof of the claim before the Probate Court was properly admitted in support of the declaration. There was no variance. The declaration merely sets out in more detail than the claim filed the consideration for the promise to give. It sets forth no new claim.

The testimony of incorporators and officers of the plaintiff was properly admitted. The officers and stockholders of a corporation, while interested, are not parties in actions by or against the corporation in which they are not joined, within the exception contained in Sec. 117, Sub. Sec. 2, Chap. 87 of the R. S.

The jury must have found that the offer of Mr. Osgood made January 12, 1922, to the plaintiff was accepted at a meeting at which Mr. Osgood was present February 3, 1922, which finding has sufficient evidence to support it.

There is also evidence in the case from which the jury may have been warranted in finding, in confirmation of the 'acceptance of Mr. Osgood's offer, that officers of the plaintiff corporation with the knowledge of Mr. Osgood during his lifetime and with the knowledge of the directors of the plaintiff corporation and their sanction as a Board, took steps toward carrying out the purposes for which the proposed gift was to be made, though the authority of said officers to incur any expense in behalf of the corporation during Mr. Osgood's lifetime may be lacking.

On exceptions and motion. An action to recover on an alleged oral offer to give twenty thousand dollars made in his lifetime by defendants' decedent for a specific purpose to the plaintiff which was not consummated as a gift inter vivos nor a demand made on decedent during his lifetime, but accepted by the plaintiff during the lifetime of decedent, and that certain acts were done by plaintiff before the death of the promisor toward the fulfillment of the specific purpose for which the offer was made, which it was alleged constituted a valuable consideration for the promise to give. A verdict was rendered for the plaintiff in the sum of $21,150. During the trial exceptions were taken by the defendants to the admission and exclusion of certain testimony, and also to a refusal to direct a verdict for the defendant, and defendant also filed a general motion for a new trial. Exceptions and motion overruled.

The case is fully stated in the opinion.

*William H. Gulliver, Dana S. Williams and Edmund P. Mahoney,* for plaintiff.

*George C. Wing and George C. Wing, Jr.,* for defendants.

SITTING: WILSON, C. J., PHILBROOK, DUNN, DEASY, STURGIS, JJ.

WILSON, C. J. An action to recover of the estate of Charles H. Osgood, formerly a prominent business man of Lewiston, the sum of twenty thousand dollars, which, it is alleged, Mr. Osgood during his lifetime, to wit, on January 12th, 1922, agreed to give to the plaintiff, a duly organized charitable corporation under the laws of this State, for the purpose of constructing an addition to its hospital buildings to be known as the west wing. The action was tried before a jury, which awarded the plaintiff a verdict for the full amount claimed, with interest from the date of demand upon the executors. The case is before this court on a motion for a new trial on the usual grounds

and numerous exceptions to the introduction or exclusion of evidence and to a refusal to direct a verdict for the defendants.

Owing to the ruling of this court upon the motion, but two of questions raised by the defendants' exceptions require special consideration; as it does not appear from the bill of exceptions that the defendants were aggrieved by the rulings of the court to which exceptions upon other grounds were taken.

The exception to the admission of the proof of claim filed in the Probate Court by the plaintiff against the estate of Mr. Osgood is untenable. That the declaration sets forth more specifically than was set forth in the proof of claim the consideration for the alleged promise to give could not have prejudiced the defendants, especially since even further specifications were filed at the defendants' request.

The claim filed sets forth that Mr. Osgood on January 12th, 1922 contracted to give the sum named and that there was a valid consideration for the contract. The declaration alleges in addition to the contract to give that the offer to give was accepted by the plaintiff on February 3d, 1922, and that in consequence of and relying on the promise to give, the plaintiff incurred certain financial obligations and failed to do certain things in the promotion of the interests of the Hospital that it otherwise would have done. These additional allegations were obviously intended to set forth what the plaintiff contends was the consideration which rendered the promise to give binding and which was only set forth in the proof of claim in general terms. It is no new claim.

The testimony of several incorporators and officers of the plaintiff corporation was offered by the plaintiff and admitted against the objection of the defendants' counsel upon the ground that such officers and incorporators were in effect parties to the suit and so were disqualified as witnesses under Chap. 87, Sec. 117, Sub. Sec. 2.

The defendants' counsel evidently places little reliance upon this contention. They cite no cases in point. All decisions of the courts where this question has been raised appear to be against their contention. *Grange Warehouse Ass'n* v. *Owen,* 86 Tenn., 355; *Merriman* v. *Wickersham,* 141 Cal., 567; *Rust* v. *Bennett,* 39 Mich., 521. Also see 40 Cyc., 2290 and note in 9 Am. and Engl. Anno. Cases, Page 181 for further citations. The statute of this State includes only parties to the action and even though a corporation can only speak through its officers, such officers are not parties to the

action within the meaning of this statute. All the testimony of the officers or incorporators of the plaintiff corporation, if otherwise admissible, was properly received for the consideration of the jury.

The real issue in the case, however, is raised on the refusal to direct a verdict and on the motion for a new trial, viz., whether the oral promise or agreement of Mr. Osgood to give to the plaintiff the sum of twenty thousand dollars is now enforceable against his estate after his death by reason of a lack of consideration to support it during his lifetime.

The defendants say that admitting a definite offer to give the sum named within one year, it never went beyond the stage of a mere offer; that the evidence did not warrant the jury in finding that the offer was ever accepted by the plaintiff, or if it does, that there is still lacking evidence of any consideration to make it a binding promise on the part of Mr. Osgood and so bind his estate after his death.

We think there was sufficient evidence from which the jury was warranted in finding that the offer of Mr. Osgood was considered by the plaintiff at a meeting of its directors, and its intent to accept the proposed gift for the express purpose for which it was offered was clearly shown.

But even though the jury were warranted in finding an agreement on Mr. Osgood's part to give and an acceptance, or an intent on the part of the plaintiff to accept and conveyed to Mr. Osgood during his lifetime, the troublesome question is still left: was there a valid consideration for Mr. Osgood's promise to give?

The courts in the earlier decisions appear inclined to hold such agreements to give for charitable purposes are not enforceable for various reasons; *Boutell* v. *Cowdin*, 9 Mass., 254; *Phillips Limerick Acad.* v. *Davis*, 11 Mass., 113; *Trustees of Bridgewater Academy* v. *Gilbert*, 2 Pick., 579; *Foxcroft Academy* v. *Favor*, 4 Maine, 382; but beginning with *Amherst Academy* v. *Cowls*, 6 Pick., 427; *Trustees of Parsonage Fund in Fryeburg* v. *Ripley*, 6 Maine, 442 there is clearly discernable a more liberal attitude toward sustaining such agreements. *Williams College* v. *Danforth*, 12 Pick., 541; *Ladies Collegiate Institute* v. *French*, 16 Gray, 196; *Ives* v. *Sterling*, 6 Met., 310; *Athol Music Hall Co.* v. *Carey*, 116 Mass., 471; *College Street Church* v. *Kendall*, 121 Mass., 528; *Troy Academy* v. *Nelson*, 24 Vt., 189; *Barnett Adm.* v. *The Franklin College*, 10 Ind., App. 103; *Collier* v. *Baptist Education*, 47 Ky., 68; *Albert Lea College* v. *Brown Admr.*, 60 L. R. A., (Minn.), 870.

It is true many of the cases may be differentiated from the case at bar, especially if it be held that there was no evidence properly admitted in the instant case of any acts done by the plaintiff during Mr. Osgood's lifetime and of which he was cognizant, in furtherance of the purpose for which the funds were to be given. It may also be true that in strict theory the sustaining of such promises to give cannot be upheld as a contract based on a valid consideration. Williston on Cont., Vol. I, Page 249. However, the courts have sustained them as contracts in numerous instances, not only where the performance in part at least of the purpose for which the funds were subscribed or promised were shown, or where liabilities were incurred on the strength of such promise, but in many of the cases the courts have indicated that they regarded the promise on the part of the donee, or promisee, to accept the proposed gift with the express or implied undertaking to apply it to a specific purpose for which it was to be given as a valid and sufficient consideration to bind the promisor. In other words, it has been held that an express promise, or the implied promise contained in the acceptance of a proposed gift upon the conditions upon which it is offered, as for instance, to apply the gift to the purposes specified in the offer, is a valid consideration for the promise to give. One promise supports the other, without incurring any expense or other obligation to the detriment of the promisee, except the obligation to carry out the trust it has agreed to assume in accepting the gift, and which it can in equity be compelled to fulfill.

If it were an entirely new question in this State we might hesitate to adopt the reasoning that has led the courts to enforce such promises without any other consideration than the implied promise to fulfill the conditions of the proposal involved in the mere acceptance of the offer to give, but this court appears to have committed itself to this doctrine and it finds support in other jurisdcitons.

In *Collier* v. *Baptist Education Soc.*, 47 Ky., 68, the court said: "In the execution of this note then, there was on one side the obligation to appropriate this fund to the provision of the charter and the promise to pay on the other."

In *Helfenstein's Est.*, 77 Pa. St., 329: "If the note had been accepted by the trustees before the death of the promisor, it would have stood on the footing of the principle applied in *Chambers* v. *Calhoun*, 6 Harris, 13; for in such case, if the trustees assumed the

duty imposed upon them by the terms of the condition of the note, it would be a sufficient consideration to sustain the promise."

In *Troy Academy* v. *Nelson*, 24 Vt., 194 the court said: "But a sufficient consideration, we think, is readily found in the case. A legal consideration may consist in loss, damage, or inconvenience, sustained by the party to whom the promise is made or of benefit or advantage to the party promising. The amount of the consideration is unimportant, nor is it necessary in this state that it should appear on the face of the contract or agreement, as it may be proved *aliunde.* The consideration for this agreement is found in the obligations imposed upon and assumed by the Trustees of this Academy to see. to and make the application of this money as directed by the subscribers to this fund so as to enable this Institution to prosecute its duties of public instruction for which it was incorporated, thus rendering this assumed liability and promise the consideration of the promise by the other. To create this obligation upon this corporation or its trustees, it was not necessary that the instrument should have been signed by them for that obligation arises from the acceptance of those subscriptions for that purpose, and which can be enforced at law and in equity."

In *Barnett Admr.* v. *The Franklin College*, 10 Ind., App., 103, 109: "The principle upon which promises of the character of those embraced in the present case are held to be valid is the reciprocal undertaking on the part of the promisor to pay and the promisee to perform something of value to the promisor . . . The acceptance of the obligation imposed creates a trust incapable of being subsequently renounced, and which may be enforced by proper legal proceedings.

*Amherst Academy* v. *Cowls*, 6 Pick., 427: "But it is quite sufficient to create a consideration that the other party, the payee, should have assumed an obligation in consequence of receiving the note, which he was compellable either at law or equity to perform."

*Ladies Collegiate Institute* v. *French*, 16 Gray, 196: "The second objection is that the promises of the defendants being mere subscriptions to the funds of the Institute are without consideration and therefore void. Subscriptions of this character have been made the subject of litigation in many instances and the earlier cases in our reports contain *dicta* some of which have not been sanctioned by later decisions. But in the cases of *Amherst Academy* v. *Cowles,*

6 Pick., 427; *William's College* v. *Danforth*, 12 Pick., 541; and *Thompson* v. *Page*, 1 Met., 565, their validity is established and the ground of it definitely stated. It is held that by accepting such subscription the promisee agrees on his part with the subscriber that he will hold and appropriate the funds in conformity with the terms and objects of the subscription and thus mutual and independent promises are made, which constitute a legal and sufficient consideration for each other. They are thus held to rest upon well-settled principle in respect to concurrent promises."

The same rule is recognized in *Cottage St. Church* v. *Kendall*, 121 Mass., 528, 530: "In every case in which this Court has sustained an action upon a promise of this description, the promisee's acceptance of the defendant's promise was shown either by express vote or contract assuming a liability or obligation legal or equitable, or else by some unequivocal act such as advancing or expending money or erecting a building in accordance with the terms of the contract and upon the faith of the defendant's promise."

Chief Justice Holmes in discussing this question in *Martin* v. *Meles*, 179 Mass., 114, reviewed the cases in which the Massachusetts Court has considered it and the grounds upon which such promises have been enforced, and in discussing the view that it is necessary to show some acts or expense incurred in carrying out the purposes for which the promises to contribute was made, said:

"A more serious difficulty if the acts are the consideration, is that it seems to lead to the dilemma that either all acts to be done by the Committee must be accomplished before the consideration is finished, or else the defendant's promise is to be taken distributively and divided up into distinct promises to pay successive sums as successive steps of the Committee may make further payments necessary and may furnish consideration for requiring them. The last view is artificial and may be laid on one side. In the most noticeable cases where a man has been held entitled to stop before he has finished his payments, the ground has not been the divisibility of his undertaking but the absence of consideration which required the Court to leave things where it found them. (citations). As against the former view, if necessary, we should assume that the first substantial act done by the Committee was all that was required in the way of acts to found the defendants' obligation. (citation). But if that were true, it would follow that as to the future conduct of the Committee their

promise and not their performance was the consideration, and when we have got as far as that, it may be doubted whether it is not simpler and more reasonable to set the defendants' promise against the plaintiffs' promise alone.  We are inclined to this view, but do not deem a more definitive decision necessary, as we are clearly of opinion that, one way or the other, the defendants must pay."

Of more importance in sustaining our conclusions in the case at bar is the position taken by our own court, from which we see no sufficient reason to depart at this time.  In *Trustees Fryeburg* v. *Ripley*, 6 Maine, 442 the court said:  "The subscribers have expressed in plain terms the conditions on which their donations are made and by these require of the trustees the performance of several duties attended with labor and some expense.  The acceptance of the donations on these conditions amounts to an undertaking on the part of the trustees, to perform this labor and incur the necessary expense of recording the list of donations and the directions of the donors and furnishing copies as required by them; this acceptance and undertaking of the trustees at the request of the donors form a good consideration for the note in question."

*Maine Central Institute* v. *Haskell*, 73 Maine, 140, 143 in which this court reviewed the authorities and concluded:  "The promise was made to a definite payee by name, one legally competent to take, incorporated for the express purpose of carrying out the object contemplated in the promise and therefore amenable to law for negligence or abuse of the trust.  It is not, of course, binding upon the promisor until accepted by the promisee and may up to that time be considered as a revocable promise.  But when so accepted, and much more when the execution of the trust has been entered upon, when money has been expended in carrying out the purposes contemplated, it becomes a completed contract binding on both parties; the promise to pay and at least the implied promise to execute each being a consideration for the other."

The quotations in this case from other authorities in support of its conclusion are all to the effect that the promise to execute is a consideration for the promise to give.

In *Haskell* v. *Oak*, 75 Maine, 519, 423, this court again said:  "To say nothing of the advantage secured to himself as owner of an overloaded stock through payments made by his fellow subscribers, there was in the implied undertaking of the payee to devote the sub-

scription which he accepted to the purpose declared, a sufficient consideration to support the promise," citing the same line of authorities as in *Me. Central Institute* v. *Haskell.*

This court, therefore, appears to have committed itself to the doctrine, that a promise, whether express or implied, on the part of the promisee, in case of a proposed gift for a special purpose, to devote the gift when received to the purpose named, or receive it upon the conditions stated, is a sufficient consideration to support the promise to give; and that such a promise to execute may be implied from an unequivocal acceptance of the gift itself, and especially from any acts or expense incurred in furtherance of the purpose or in compliance with the conditions.

If such acts were necessary to show the acceptance of Mr. Osgood's offer and the purpose to devote the funds when received to the building of the west wing of the hospital, evidence was received showing acts of the President of the plaintiff corporation and of one other member of the Board of Directors in relation to carrying out this purpose. Acts of which we think the jury from all the evidence were warranted in inferring that the other members of the Board of Directors, including Mr. Osgood in his lifetime, by reason of the interest manifested by him in this particular project, must have had knowledge.

Question was raised as to the authority of these men to act or bind the corporation. The authority to bind as to financial obligations may not have been shown prior to Mr. Osgood's death, though their acts in obtaining plans may have been later ratified; but by reason of their official position and as members of a committee appointed to oversee the construction of a Nurses' Home for the hospital, which was constructed by outside parties and presented to the hospital on January 12, 1922, which Committee, although the Home had been constructed, presented, and dedicated, was continued by vote of the directors at the meeting of February 3, 1922, we think that their acts in conferring with architects and obtaining preliminary sketches for a west wing may have been properly found by the jury, from the admissible evidence, to have been done with the knowledge of all the directors and with their sanction as a Board.

Nor do we regard it as a sufficient reply to say that any acts done or steps taken during Mr. Osgood's lifetime toward the construction of a west wing were taken solely in view of a generous bequest for

that purpose by another former Lewiston resident in his will published just before Mr. Osgood's offer on January 12th, and not in any respect in consequence of Mr. Osgood's accepted offer to give toward the same object.  As the court said in *Martin* v. *Meles,* supra, that is a speculation upon which the court will not enter.  Both gifts when consummated, were for the same object and any acts of the plaintiff indicating an intent to carry out the purpose for which the gifts were promised or made must be presumed to be, unless otherwise shown, in furtherance of each.

We do not hold that the mere acceptance of an unconditional promise to give for the general purposes of a charitable corporation will always satisfy the requirements of a valid consideration.  A corporation is bound to carry out the general purposes for which it was organized and it assumes no new burden by accepting a proposed gift without limitations.  Where, however, the proposed gift is stipulated by the donor to be devoted to some particular purpose and is accepted with that condition attached, a special obligation in respect to that particular fund ensues in addition to the duty to carry out its general purposes, though the acceptance of the conditional gift must of course be in furtherance of them, a distinction clearly pointed out by the  Vermont Court  in *Montpelier Seminary* v. *Smith,* 69 Vt., 382, 386-387.

*Exceptions and motion overruled.*