AMERICAN UNIVERSITY *v.* COLLINS,
ADMINISTRATRIX, ET AL.

[No. .153, October Term, 1947.]

*Decided May 27, 1948.*

The cause was argued before MARBURY, C.J., DELA-PLAINE, COLLINS, and HENDERSON, JJ.

*D. C. Colladay* and *Hilary W. Gans,* with whom were *Colladay, Colladay & Wallace* and *James W. Hughes* on the brief, for the appellant.

*Edward D. E. Rollins* for the appellee.

MARBURY, C.J., delivered the opinion of the Court.

On April 1, 1940, a certain Lidie M. Voshell, a resident of North East in Cecil County, signed in the presence

690

of two witnesses the following paper which was delivered to the appellant.

"Estate                                               No. 41
$6,000,000—The American University—$6,000,000
Washington, D. C.
Chartered by Special Acts of Congress
Approved February 24, 1893, and
March 2, 1895
Date April 1, 1940

In consideration of my interest in Christian Education and for and in consideration of the mutual promises of other subscribers to The American University Fund of $6,000,000 for Endowment, Buildings, Betterments, Equipment, Liquidation and Expenses, I hereby promise and will pay to The American University, an educational corporation organized and existing by and under certain Acts of Congress, the sum of ONE THIRD OF MY ESTATE . . . Dollars ($⅓ of my estate) payment to be made to the Treasurer of said American University at Washington, District of Columbia.

This subscription is made upon the following terms and conditions:

1. This pledge shall become due upon the day of my decease and shall be paid within one year thereafter by my Administrator or Executor out of the proceeds of my estate.

2. This subscription shall bear interest at the rate of . . . per cent (  %) per annum, payable semi-annually, from and after December first, 1927. To be known as the Lidie M. Voshell Memorial Fund."

On July 15, 1944, Mrs. Voshell died, seized and possessed of valuable real estate, and owning considerable personal property. She left no will, and the appellee, Florence W. Collings, was appointed her administrator by the Orphans' Court for Cecil County. The appellant filed a claim against her estate in the Orphans' Court and made demand upon the administratrix for ⅓ of the estate which was refused. Thereupon it filed its bill of complaint (subsequently amended) in the Circuit

Court for Cecil County alleging that it was a corporation organized and existing under special Acts of Congress and located in the District of Columbia; that, by such Acts, it was empowered to establish and maintain within the District of Columbia a university and that it does maintain such a university; that it has carried among its assets upon which it has placed reliance in its planning operations the estate pledge of Mrs. Voshell; that the amount due it under said pledge can only be arrived at by means of an accounting; that a full and adequate remedy can only be afforded it by a court of equity, and that in the interest of simplicity and economy the administration of the estate of Mrs. Voshell should be completed by the equity court. The amended bill, filed against the administratix and the heirs-at-law of Mrs. Voshell, prays an accounting, and asks that the court direct the payment to it of $\frac{1}{3}$ of the total of the estate, and that the court complete the administration of the estate. Further relief is also requested. To this bill the defendants demurred. The chancellors sustained the demurrer and dismissed the amended bill of complaint, whereupon the complainant appealed.

The argument on behalf of the complainant is that the pledge is not testamentary, that the fact that it calls for payment of a fraction of an estate rather than a fixed sum does not render it so uncertain that it does not meet the requirements of a present obligation, and that there was adequate consideration for the pledge to make it a binding obligation.

There are cases in this court which hold that where one has made a subscription and thereby authorized the entering into engagements to accomplish the purpose for which the subscription was made, the subscription was upon a valuable consideration. See *Gittings v. Mayhew*, 6 Md. 113; *Erdman v. Trustees of Eutaw Church*, 129 Md. 595, 99 A. 793. In these cases, however, the promisee had actually incurred obligations relying upon the promises. In the case before us, it is not claimed that any such obligations had been entered into. The conten-

tion is made in a most general way that pledges of this nature were kept by the appellant and considered by it in planning its future development.

A number of cases from other jurisdictions are cited by the appellant to support the conclusion, which, it states, represents the general trend of judicial authority, and it is in accordance with the better reasoned opinion, that contracts for subscriptions or donations to churches or charitable or kindred institutions which have been duly accepted are based upon a valid consideration because of the mutual obligations of other subscribers. The pledge before us, it is contended, comes within this view. Among the cases cited are *Presbyterian Board of Foreign Missions v. Smith,* 209 Pa. 361, 58 A. 689; *New Jersey Orthopaedic Hospital v. Wright,* 95 N. J. L. 462, 113 A. 114; *Barnett v. Franklin College,* 10 Ind. App. 103; 37 N. E. 427; *Annotation,* 38 *A. L. R.* 868. However, Professor Williston critizes this view on the ground that each subscriber makes his promise directly to the charitable corporation and not in exchange for the promisee's inducing other persons to subscribe. *1 Williston on Contracts,* Rev. Ed., § 116. This last view was held by the Delaware court in a case involving a pledge similar to the one here in question. *American University v. Todd,* 9 W. W. Harr., Del., 449, 1 A. 2d 595.

It is also contended by the appellant that the fact that the fund pledged is to be known as a memorial fund under the name of the donor also furnishes a basis for holding that the pledge was given for a valuable consideration.

In view of our conclusion on the other question involved, it becomes unnecessary for us to decide either of appellant's contentions that the pledge was given for a valid consideration. We think the paper is testamentary in its nature.

This court in the case of *Cover v. Stem,* 67 Md. 449, 10 A. 231, 232, 1 Am. St. Rep. 406, held that a paper writing stating "at my death, my estate or my executor pay to July Ann Cover the sum of $3000." was testamentary in

character and was not enforceable. In discussing the reason for the decision the court said "There must be terms employed to create a *debitum in praesenti,* although the *solvendum* may be *in futuro* and even after death of the obligor. It would seem to be clear that the relation of debtor and creditor must be created, and existent in the lifetime of the parties to the instrument, though the time of payment may be deferred until after the death of one of the parties." In the case of *Feeser v. Feeser,* 93 Md. 716, 50 A. 406, there was an instrument under seal which said "Due David H. Feeser the sum of $204.68, with interest from date * * * said sum of money and interest * * * to be paid by my executor out of my estate within one year after my death * * *." The court said this constituted an admission of a present debt and was enforceable against the testator's estate. A similar decision was made in the case of *Junkins v. Sullivan,* 110 Md. 539, 73 A. 264. In the case of *Harper v. Davis,* 115 Md. 349, 80 A. 1012, 35 L. R. A., N. S., 1026, Ann. Cas. 1913A, 861, a promissory note to pay "$3000.00, without interest, after my death" imported a consideration and the court held that the plaintiff made out a *prima facie* case by its production in evidence. It was there stated: "The fact that the note was payable after the maker's death would not of itself defeat recovery."

The pledge which it is endeavored to enforce in this case is not, on its face, an acknowledgement of any existing indebtedness. It is a paper writing attempting to leave the appellant a share of the pledgor's estate after her death. The pledgor retained full possession of her estate during her lifetime, and could, at any time during her life, dispose of any or all of it without regard to any claim of the appellant. The appellant had no claim or debt upon the basis of which it could prevent the pledgor from alienating her property before she died. Such claim as it had, was, by the terms of the instrument creating it, effective only after the death of the pledgor.

In the case of *American University v. Conover,* 115½ N. J. L. 468, 180 A. 830, the New Jersey court had before it a pledge practically identical in language with the one before us, except that in that case it was for a scholarship fund instead of a memorial fund. It was there held that this paper was an attempted testamentary disposition, and, as such, was void, because it did not comply with the New Jersey statutes.

Since it is not contended that the pledge in this case was executed in accordance with the testamentary laws of this State, it cannot be given effect otherwise, and the decree will be affirmed.

*Decree affirmed, with costs.*

DELAPLAINE, J., delivered the following dissenting opinion.

I think the subscription given to the American University in this case should be considered as a contract, and not as a will. Mrs. Voshell made the following pledge: "I hereby promise and will pay to the American University  *  *  *  the sum of one-third of my estate." The instrument was delivered to the University, and the University accepted it. No precise language is required to create a legal obligation. It is necessary only that such language be used as will clearly show the intention of the person to be bound. Where the relation of debtor and creditor exists during the lifetime of the parties, the mere fact that the time of the payment of the obligation is deferred until after the death of the debtor is not sufficient to make it merely a testamentary paper. If a party signs an instrument creating an obligation which is payable after his death, he creates a *debitum in praesenti solvendum in futuro,* which is irrevocable like any other obligation. *Cover v. Stem,* 67 Md. 449, 10 A. 231, 1 Am.. St. Rep. 406; *Junkins v. Sullivan,* 110 Md. 539, 542, 73 A. 264; *Patterson v. Chapman,* Cal., 179 Cal. 203, 176 P. 37, 2 A. L. R. 1467.

It is true that ordinarily a promise to make a gift is an offer which, in the absence of consideration, cannot be enforced. *Cottage Street Methodist Church v. Kendall,* 121 Mass. 528, 23 Am. Rep. 286. But a charitable subscription is an offer which becomes a binding contract as soon as the enterprise toward which the subscription was given has been commenced, or liability has been incurred in furtherance of the enterprise on the faith of the subscription. The courts ought not to allow charitable work to be frustrated and the trustees of such enterprises to be embarrassed by the refusal of individuals to comply with their solemn pledges to contribute during the progress of work which they themselves have set in motion. *Gettings v. Mayhew,* 6 Md. 113, 131, 132; *Erdman v. Trustees of Eutaw Church,* 129 Md. 595, 99 A. 793; *Amherst Academy v. Cowls,* 6 Picks., Mass., 427, 17 Am. Dec. 387, 391; *Keuka College v. Ray,* 167 N. Y. 96, 60 N. E. 325; *Trustees of University of Pennsylvania v. Cadwalader,* 277 Pa. 512, 121 A. 314; *Furman University v. Waller,* 124 S. C. 68. 117 S. E. 356, 33 A. L. R. 615; *Hardin College v. Johnson,* 221 Mo. App. 285, 3 S. W. 2d 264; *Rouff v. Washington and Lee University,* Tex. Civ. App., 48 S. W. 2d 483.

In this case the subscriber makes her pledge in consideration of her interest in Christian education, and the University avers that the subscription was accepted upon the terms and conditions stipulated therein, and was entered upon its records. The University also asserts that it must rely largely for its support upon contributions from benefactors; that it does not appraise individual pledges and determine to what extent it should rely on each, but in the administration of its affairs it reckons this mass of potential receipts importantly in its financial planning, and is enabled by experience to make a rough estimate of the percentage of loss. The English courts have rigidly held that subscriptions to charitable and educational institutions are promises without consideration, which may be withdrawn at any time before acceptance, and are therefore *nudum pactum.*

However, it is recognized in the United States that charitable pledges and bequests, because of their lofty motivation and the benefits which they confer upon society, should be strongly favored by the courts. *Inasmuch Gospel Mission v. Mercantile Trust Co. of Baltimore*, 184 Md. 231, 40. A. 2d 506. The trend of American decisions has been to uphold such subscriptions whenever it can be done without overstepping entirely the established rules requiring consideration for contracts. *New Jersey Orthopaedic Hospital & Dispensary v. Wright*, 95 N. J. L. 462, 113 A. 144. In fact, some courts have held that it is not necessary that the institution shall have done a particular thing in reliance upon a particular promise, and thus have adopted the rule that the promise impliedly given by the institution that the fund subscribed will be used in conformity with the terms and objects of the subscription is sufficient consideration to support the subscriber's promise. *Ladies' Collegiate Institute v. French*, 16 Gray, Mass., 196; *Barnett v. Franklin College*, 10 Ind. App. 103, 37 N. E. 427; *In re Griswold*, 113 Neb. 256, 202 N. W. 609, 38 A. L. R. 858; *Central Maine General Hospital v. Carter*, 125 Me. 191, 132 A. 417, 44 A. L. R. 1333; *Idwin v. Lombard University*, 56 Ohio St. 9, 46 N. E. 63, 36 L. R. A. 239, 60 Am. St. Rep. 727.

I do not think it is necessary to rely upon the provision in the pledge that it is given "in consideration of the mutual promises of other subscribers to the American University Fund of $6,000,000 for Endowment, Buildings, Betterments, Equipment, Liquidation and Expenses." Some courts have sustained charitable subscriptions as contracts on the ground that the promise of each subscriber is supported by the promises of the other subscribers. *University of Southern California v. Bryson*, 103 Cal. App. 39, 283, P. 949. Professor Williston has criticized that view for the reason that the promise of each subscriber is ordinarily made directly to the charitable corporation, and the subscriber actually does not make his promise in exchange for the promisee's inducing other persons to subscribe. 1 *Williston on Con-*

*tracts,* Rev. Ed., sec. 116. However, I think the pledge in this case is a legal obligation because (1) it was given to a University chartered by Congress for the express purpose of carrying out the object contemplated in the instrument, (2) it was given toward a fund to raise the University's endowment and give the institution greater stability and efficiency, and (3) it expressly provided that the subscription shall be known as "The Lidie M. Voshell Memorial Fund."

I am of the opinion that a subscription to a scholarship fund, made upon the condition that the gift shall bear the donor's name and serve to perpetuate her memory, has sufficient consideration to support the donor's promise and creates a bilateral agreement. In *Allegheny College v. National Chautauqua County Bank of Jamestown,* 246 N. Y. 369, 159 N. E. 173, 176, 57 A .L. R. 980, Chief Judge Cardozo said: "A parallel situation might arise upon the endowment of a chair or a fellowship in a university by the aid of annual payments with the condition that it should commemorate the name of the founder or that of a member of his family. The university would fail to live up to the fair meaning of its promise if it were to publish in its circulars of information and elsewhere the existence of a chair or a fellowship in the prescribed subject, and omit the benefactor's name. A duty to act in ways beneficial to the promisor and beyond the application of the fund to the mere uses of the trust would be cast upon the promisee by the acceptance of the money. We do not need to measure the extent either of benefit to the promisor or the detriment to the promisee implicit in this duty. * * * The longing for posthumous remembrance is an emotion not so weak as to justify us in saying that its gratification is a negligible good."

I think that the duty assumed by the American University to perpetuate the name of Mrs. Voshell as the founder of a memorial fund is sufficient to give validity to the subscription. When the University acceded to the condition stipulated in the pledge, the result was the creation of a bilateral contract.